448 So.2d 254 (1984)
Jacqueline Anne WICKBOLDT
v.
Alvah Tyson WICKBOLDT.
No. 83 CA 1144.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
*255 Linda Watkins, Baton Rouge, for plaintiff-appellee Jacqueline Anne Wickboldt.
Stuart R. Thomson, Baton Rouge, for defendant-appellant Alvah Tyson Wickboldt.
Before COVINGTON, LOTTINGER and EDWARDS, JJ.
COVINGTON, Judge.
This is an appeal by defendant-plaintiff-in-rule, Alvah Tyson Wickboldt, from a judgment in favor of plaintiff-defendant-in-rule, Jacqueline Anne Wickboldt, maintaining custody of the minor child, Jennifer Rose Wickboldt, in the mother of the child, subject to certain conditions. We affirm.
The Wickboldts were married on November 29, 1975 and resided in East Baton Rouge Parish. Of this marriage one child, Jennifer Rose, was born. When the child was about 15 months old, the parents separated, and a judgment of separation was granted between the parties on June 23, 1978. In those proceedings, Mrs. Wickboldt was granted custody of the child, subject to reasonable visitation rights of the father.
The marriage was terminated by judgment of divorce in favor of Mrs. Wickboldt on December 1, 1980.[1] Permanent custody of the child was granted to the mother, subject to reasonable visitation rights of Mr. Wickboldt. Child support was awarded. Although not in the record, it appears that on February 25, 1983, the father filed a rule to change custody, the denial of which is the subject of this appeal.
On appeal, the father contends that the trial court erred in denying change of custody to him and, alternatively, in refusing to grant joint custody to both parents. There is no merit in either contention.
Being a rule to change custody, this situation is governed by LSA-C.C. art. 157(A), which provides for the granting of custody in accordance with LSA-C.C. art. 146. At the time of the filing of the instant rule, there was a rebuttable presumption under Article 146 that joint custody was in the *256 best interest of the child. This principle is consistent with the established jurisprudential rule that in custody cases the paramount consideration is always the best interest of the child. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Gulino v. Gulino, 303 So.2d 299 (La.App. 1st Cir.1974).
There was some evidence that for a period of time the child had small sores on her body from mosquito bites and that her personal hygiene left a lot to be desired. There was also evidence that Mrs. Wickboldt had lived with two different men since 1980, and had used alcohol and drugs.
In his reasons for judgment, the trial judge remarked:
"This case involves the custody of a child, who will be seven years old on the 29th of this month.
"By judgment of separation, in early 1978, her custody was awarded to her mother, and in February 25, 1983, a rule was filed by the child's father to change custody because of circumstances which existed. It is to be noted that as of that date, she was living with her mother here in Baton Rouge, and her mother was living with the maternal grandparents here in Baton Rouge.
"The court has listened to the testimony in detail, taken very detailed notes, which I have reviewed throughout the process of the case.
"We've heard some testimony concerning those mosquito bites, and some testimony concerning other problems, but nothing in this court's opinion, no proof that Mrs. Peterson [Mrs. Wickboldt] has done anything detrimental to this child, except allowing the child to remain in an unstable and immoral environment for a period of time. It is, however, pretty obvious that that did not work to the serious detriment of this child. This is truly a gifted and talented child, and is in my opinion one of the most bright, sociable, intelligent, poised, and just overall doll that this court has ever met for that age.
"Mrs. Wickboldt, rather, Mrs. Peterson did take herself out of what was an extremely bad situation. She has not cleared up all of her problems, and is going to have to do that. People can change, and the proof of that is Mr. Wickboldt himself, who has made a success now of his life. He did admit in testimony to using drugs. He has to take some of the responsibility for Mrs. Peterson's drug usage because they started down that road together, as I recall the testimony, even before they were married. But he proves to the court that people can change.
"The sole test in these kinds of cases is what is in the best interest of the child involved. Stability is still a very important factor. This child has been with her mother since November, 1977, at the very least by the pleadings because that's when the parties separated according to the pleadings. This situation does seem stable now. She is apparently doing well in school, seems to be very happy, and very adjusted, and is very happy about her father and his situation, and her new brother. She has the love and affection of a family, a natural parent, and two natural grandparents, and an aunt in a stable home at this time.
Mr. Wickboldt is starting a new family with all the problems in starting a new family.
"All things considered, the court feels that there is no reason to change custody at this time, provided that the court will place certain conditions on the continued custody in Mrs. Peterson. Until further orders of this court, custody is conditioned upon Mrs. Peterson not consuming alcoholic beverages or controlled dangerous substances; regular attendance at Alcoholics Anonymous meetings; no association with Forest Dowdy or Steve Royer; and her domicile is restricted to the Parish of East Baton Rouge."
While the record reveals that Mrs. Wickboldt's past behavior has not been exemplary, there is evidence that she has "reformed." The jurisprudence has developed a "reformation rule" to the effect that a mother is not considered unfit simply because of past conduct or past adulterous *257 relationships if she has "reformed," either by ceasing the conduct or the relationship, or marrying the paramour. See Fulco v. Fulco.
The evidence shows that at the time of the hearing, Mrs. Wickboldt was living with her parents in Baton Rouge; she was working, was not taking drugs at that time and was not living with a "boyfriend." She still had a problem with alcohol, but promised to continue attending AA meetings. We find that this evidence suggests a reasonably stable home environment and an attempt to "reform" by Mrs. Wickboldt.
Aside from the consideration of the mother's "reformation," we find that it is in the best interest of the child for her to remain in the custody of her mother under the conditions set by the trial judge. Mrs. Wickboldt has apparently had the responsibility for raising Jennifer since the child was about a year old. Jennifer appears to be bright and talented, and does well in school. She seems reasonably happy and well-adjusted under the circumstances. There have been no apparent ill effects upon the child due to the mother's problems.
We are also mindful of the rule that the trial judge's decision in custody matters is entitled to great weight, because he is in a better position to evaluate the child's best interest due to his overview of the conduct and character of the parties. Fulco v. Fulco. In the absence of a clear showing of abuse, the trial judge's discretion should not be disturbed on review. Cleeton v. Cleeton, 383 So.2d 1231 (La.1980); Griffin v. Griffin, 424 So.2d 1228 (La.App. 1st Cir.1982).
With these principles in mind, and after a careful review of the record, we find no clear showing of abuse on the part of the trial judge.
For the reasons assigned, the judgment appealed is affirmed. Costs are assessed against the appellant.
AFFIRMED.
LOTTINGER, J., dissents for reasons assigned.
LOTTINGER, Judge, dissenting.
I disagree with the result reached by the majority.
Though the pleadings seeking a change in custody did not specifically seek joint custody as an alternative, I am of the opinion that La.Civ.Code arts. 146 and 157 mandate that the trial judge consider joint custody. This he did not do. To deprive one parent of the opportunity to participate in decisions concerning the children goes against the intention of the legislature in enacting joint custody. Joint custody awards do not in and of themselves guarantee equal physical custody of the child or children, but rather that the custodial arrangement be in the best interest of the child or children.
Therefore, I dissent and would remand for reconsideration of an award of joint custody.
NOTES
[1] In the judgment of divorce, Mrs. Wickboldt was "allowed to revert to the use of her maiden name, Jacqueline Ann Pederson (Peterson)."