593 So.2d 838 (1992)
Anthony F. BRUSCATO, Jr.
v.
Janet Avant, wife of Anthony F. BRUSCATO, Jr.
No. 91-CA-1391.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1992.
Richard A. Tonry, Michael C. Ginart, Jr., Tonry & Ginart, Chalmette, for plaintiff.
Richard L. Ducote, Fine & Associates, New Orleans, for defendant.
Cindy M. Harris, Women's Legal Center, New Orleans, amicus curiae on behalf of Louisiana Coalition Against Domestic Violence.
Before SCHOTT, C.J., ARMSTRONG, J., and GULOTTA, J. Pro Tem.
ARMSTRONG, Judge.
Defendant, Janet Bruscato, (now Snellman), appeals the trial court's judgment awarding plaintiff, Anthony Bruscato, Jr., sole custody of their five year-old son *839 Christopher. We reverse the trial court's judgment and remand for retrial.
Christopher Bruscato was born on January 2, 1986, to plaintiff, Anthony Bruscato, Jr. and his wife Janet Avant Bruscato, (now Snellman). The parties were married August 14, 1982, in New Orleans. The first court action was a Petition for Separation filed by Mr. Bruscato on June 15, 1988, which also sought sole custody of Christopher. Mr. Bruscato asserted as the basis of his suit that defendant was suffering from psychological and emotional disorders evidenced by her "disappearance" for three weeks in December 1987, and again in June 1988, when she took Christopher as well. On September 26, 1988, a hearing was held in which Janet, who could not be located, was represented by a curator. An order awarding Anthony "provisional custody" was signed the following day. At that time the child was living with his mother, who was staying at battered women's shelters across the country. On February 1989, a civil warrant issued for Janet's arrest to enforce the provisional custody decree. Anthony then undertook a nationwide campaign to locate Christopher. In April 1990, Christopher was discovered living with his mother in Montana. Anthony had Janet arrested, and he enforced the custody decree, returning Christopher to St. Bernard Parish with him, his parents, and his son Anthony III. Due to various court orders Janet had no contact with Christopher until March 1991. On July 5, 1990, Janet filed a Rule for Custody, asserting that she fled with Christopher because she was being repeatedly abused by Anthony and he threatened to harm her if she left him. Both parties filed for divorce. On October 25, 1990, the court appointed psychologist, Dr. Beverly Howze, to conduct a custody evaluation.
This case eventually came to trial on the custody and visitation issues on March 27, 28, and April 1, 1991. On April 30, 1991, judgment was rendered granting sole custody of Christopher to Anthony with reasonable visitation to Janet. Janet appeals.
By her first assignment of error, Janet argues that the court failed to attach significance to Anthony's violent background as an abuser of three wives, in so far as it relates to Anthony's fitness as custodial parent. She cites House Concurrent Resolution 172 of the U.S. Congress dated 9/27/90 and 10/23/90 for the proposition that a consensus has emerged that a history of perpetrating domestic violence should preclude one from being a custodial parent.
Anthony argues that HCR 172 is not evidence in this case because the federal government has no jurisdiction herein. Further, Anthony argues that there is no evidence to indicate that he was ever abusive of Christopher or abusive of another in Christopher's presence. He asserts that the experts declined to make the connection between spousal abuse and child abuse.
In its reasons for judgment, the trial court acknowledged that Dr. Jenkins, Janet's expert witness, testified that perpetrators in domestic abuse cases are invariably persons who resort to violence to resolve problems or conflicts. Yet, Dr. Jenkins stated that she had not interviewed Anthony and was not asserting that he was such a person. The court concluded that the theoretical nature of her analysis of the crucial issues was vague, ambiguous and imprecise and it was not persuaded by her testimony.
We agree with the trial court in so far as Dr. Jenkins' testimony is only useful in addressing custody arrangements in families where domestic violence has occurred in the abstract. However, the trial court did make a finding that it is more probable than not Anthony was a perpetrator of domestic violence. The trial court focused throughout the trial on its mandate of making a custody determination that would best serve Christopher's interest.
As the trial court stated in its reasons for judgment, a presumption exists that joint custody is in the best interest of the child; however, this presumption is rebuttable. La.C.C. article 131. In the instant case, the trial court found that joint custody was inadvisable and impractical since Janet resides in Montana and Anthony resides in Louisiana.
*840 The trial court offered extensive reasons before concluding that Christopher's best interest would be served by awarding Anthony sole custody. Specifically, it adopted the findings of the court-appointed psychologist, Dr. Howze, that Janet is severely disturbed and has a questionable history as a mother and that in the interest of maintaining the continuity of a stable home environment, Christopher should remain with his father. The trial court arrived at its conclusion in spite of its statement that it was convinced that Janet was the victim of some form of physical and/or mental domestic violence during their marriage.
By her second assignment of error, Janet raises questions about Anthony's psychiatric condition by referring to medical records which indicated psychiatric hospitalizations and a problem with substance abuse. She argues that Anthony's history of substance abuse and mental illness make him an unfit parent.
Anthony argues that Janet's attempts to prove abuse through hospital records are misleading because they reflect isolated incidents when he was in intense pain and stress. Anthony asserts that he sought medical counselling to learn his limits of both alcohol and pain medication. Expert witness testimony confirmed that Anthony has no continuous history of substance abuse. The only evidence of substance abuse occurred when he would drink excessively in combination with the use of prescribed pain medication.
The trial court stated in its reasons for judgment that these periods of alcohol usage reflect an "occasional flaw", but the body of evidence indicates that these were isolated instances before his surgery and while his son was lost. The trial court reasoned that its holding was consistent with the established jurisprudential development of the "reformation rule" to the effect that a parent is not unfit simply because of past behavior. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603, 606 (1971); Wickboldt v. Wickboldt, 448 So.2d 254, 256 (La.App. 1st Cir.1984). Nevertheless, the trial court heeded the recommendations of Dr. Howze who had evaluated both parents, and it incorporated her recommendation that both parents seek psychotherapy as a condition of its ruling.
Although it appears from all indications that Anthony is no longer using alcohol and taking prescription drugs, there are current allegations and findings that probably account for the trial court's order that Anthony seek psychotherapy. Dr. Howze testified that Anthony has difficulty using good judgment and that he is characterized by a system of massive denial. Dr. Howze's personal diagnosis of Anthony found him to be suffering from an anxiety disorder, not otherwise non-specific, with a dysthymic disorder which is long-term depression.
By her final assignment of error, Janet contends that the trial court erred in finding Anthony's home stable and secure. Janet focuses on the inability of the members of the household to acknowledge Anthony's violence, the psychiatric problems of Anthony III, Anthony's 21 year-old son by a previous marriage, and behavioral changes in Christopher such as trouble sleeping, fear of strangers and an inability to adjust at school.
Anthony argues that causation of these problems has less to do with Christopher's present placement than from the trauma his mother subjected him to during the two and one-half years she had him in flight. The trial court obviously agreed. In its reasons for judgment, the trial court noted that it found Christopher's present domicile to be a stable, satisfactory environment and conducive to maintenance and continuity. However, as part of its judgment, it also ordered that Christopher begin comprehensive outpatient psychotherapy treatment and that Anthony III be evaluated to determine whether he could benefit from the same.
It appears that the trial court invested much time and effort in this long and difficult case. The allegations made are very serious and the facts are quite disturbing.
We are not satisfied that the trial court had enough evidence before it to make a determination that it was in Christopher's best interest to remain with his father. All *841 of the experts testified from narrow and differing perspectives. Dr. Jenkins, designated as an expert in domestic violence, has a doctorate in sociology. She did not interview Anthony. Dr. Howze, the court-appointed psychologist, admitted that she was unschooled in the dynamics of domestic violence. She was the only expert to evaluate both parents. Dr. Oliver Sanders, who treated Anthony off and on since October 1989, but did not evaluate him in preparation for trial, is a child psychiatrist. In this case, where so many allegations have been made concerning the psychiatric status of both parents, we feel that the court should have had psychiatric evaluations of both parents at its disposal.
We are also troubled by the fact that the Bruscato home evaluation is so insubstantial. It does not possess the minimal references expected. The evaluator's report suggests that the primary care-taker may be Christopher's paternal grandmother as opposed to Anthony Bruscato. If this is the case, then this court feels that the background information we are demanding of the parents should also be provided on the grandparents.
Finally, much reference has been made to Janet's history as a mother; particularly in regard to the loss of the custody of the children of her former marriage. Janet explains this fact by saying that the judge awarded her former husband custody only because her son chose to live with his father as he grew older, and the judge felt that the children should be together. Because the experts and the trial court assumed that Janet's loss of custody was due to some flaw in her as a mother, we believe evidence of this fact should be forthcoming.
Finally, this court was impressed by the thorough and extensive evidence obtained on Janet and her present home through the Montana hearing and its home evaluation. Dr. Howze seems to have dismissed this evidence as insignificant merely because Janet had been married only a few months at the time of trial, and the trial court makes no mention of it whatsoever. The fact is Christopher lived with Janet in Montana a full year before he was discovered by his father and returned to New Orleans. There are allegations that Christopher is well-acquainted with Janet's current husband and regards him favorably. We feel that the evidence obtained from the Montana hearing ought to be weighed along with all the other evidence in this case.
This court has the authority to render any judgment which is just, legal, and proper upon the record on appeal. La.C.C.P. article 2164. For the foregoing reasons, we reverse and remand this case to the trial court for a retrial.
REVERSED AND REMANDED.