643 So.2d 743 (1994)
STATE in the Interest of A.C.
No. 93-CA-1125.
Supreme Court of Louisiana.
October 17, 1994.
*744 Ross P. LaDart, Gretna, Richard L. Ducote, New Orleans, for applicant.
John M. Mamoulides, Gretna, Richard P. Ieyoub, New Orleans, Barron C. Burmaster, Joan S. Benge, Andrea P. Janzen, Gretna, Gina M. Puleio, Baton Rouge, Robin M. Shulman, Sherry Watters, Mary B. Widmann, New Orleans, Hon. Randy P. Angelle, Helen J. Popich, LaFayette, Bernard & Angelle, for respondent.

ON REHEARING
LEMMON, Justice[*]
On a motion by the minor child's mother to prohibit the father from visitation or contact with the child under the provisions of the Post-Separation Family Violence Relief Act, La.Rev.Stat. 9:361-369, the juvenile court declared La.Rev.Stat. 9:364 D and 367 unconstitutional. Because the juvenile court declared a statute unconstitutional, there was a direct appeal to this court. La. Const. art. V, § 5(D). On original hearing, the majority upheld the constitutionality of the statutes on the major issues raised by the father.[1] We granted rehearing primarily to reconsider whether La.Rev.Stat. 9:364 D is unconstitutional because it prohibits all visitation and contact between a parent and child, after a court has found by a mere preponderance of the evidence that the parent sexually abused the child, until such time as the court determines that the parent has successfully completed a "treatment program designed for such sexual abusers" and that supervised visitation is in the child's best interest.
At the outset we emphasize that this decision does not reach or even discuss the power or the wisdom of the Legislature's imposing a significant limitation on the visitation and contact rights of a parent whom the *745 court, after a hearing on the issue, has found to have sexually abused his or her child. The sole issue analyzed and decided by this opinion is whether procedural due process requires, at the factfinding stage of a proceeding under La.Rev.Stat. 9:364 D, application of a standard of proof higher than that in the ordinary factfinding process in civil cases.
We hold that an elevated standard of proof in the factfinding stage is constitutionally required. This holding is based on the conclusion that the total and partially permanent loss of the parent's right to visitation and contact with his or her child is significantly more serious than the private interest involved in the ordinary civil case. Moreover, the preponderance standard which allocates the risk of erroneous factfinding almost equally between the parties is inadequate in this type of proceeding because of the tremendous disparity in consequences between a factfinding error which results in failure to impose La.Rev.Stat. 9:364 D's sanctions (in which case the court retains authority to protect the child adequately under the Children's Code) and a factfinding error which results in imposing such sanctions (in which case some parental rights are permanently lost and others are significantly limited).

Facts
The parents of A.C., the minor child involved in this litigation, separated two months after A.C.'s September 1988 birth. A consent custody judgment granted joint custody, with the mother as the domiciliary parent, and awarded scheduled visitation to the father. When the divorce was granted in November of 1989, the court maintained the custody order and granted the father increased visitation privileges.
Subsequently, A.C.'s mother became suspicious that A.C. may have been sexually abused during visits with the father. The mother reported the possible sexual abuse to the Office of Community Services (OCS) in April of 1991. Although OCS was unable to establish the occurrence of sexual abuse at the time, a court-appointed psychiatrist recommended that overnight visitation be suspended until the child was three years old. The parties then entered into a consent judgment which included a new visitation schedule. The judgment further ordered the parties to consult a mental health worker to improve communication.
After A.C. reached three years of age in September of 1991, her parents agreed to reestablish overnight visitation, which took place without incident until May 25, 1992. Following the visitation between A.C. and her father that week, the mother and maternal grandmother reported new allegations of sexual abuse to the OCS, who videotaped an interview with the child and sent her for a medical examination by a physician who reported the results as "normal." OCS then referred the case to the district attorney.
The district attorney filed a child in need of care (CINC) petition, and the court discontinued visitation pending resolution of the proceeding. After a hearing on November 10, 1992, the juvenile court, although impressed with the father's evidence, found that the videotaped interview of A.C., the expert reports, and the testimony of lay witnesses indicated that the child had been involved "in some inappropriate sexual observation and/or activity with her father." Noting that the "evidence tips in favor of protecting the child," the court adjudicated A.C. as a child in need of care "as to her father."
After a dispositional hearing the following month, the court ordered supervised weekly visitation for up to one hour at the OCS office, with OCS having discretion to consider the child's reactions and to limit the length of the visits if necessary. The court further ordered that supervision of the visits should be shifted from OCS to a neutral relative as soon as possible.
In January of 1993, the mother filed a motion to modify the judgment of disposition. The mother requested that the court apply the provisions of the newly adopted Post-Separation Family Violence Relief Act, La. Rev.Stat. 9:361-369, and terminate visitation and contact pursuant to La.Rev.Stat. 9:364 D, based upon the finding of sexual abuse in *746 the CINC proceeding.[2] The mother also requested the court to order the father to pay "all court costs, attorney fees, evaluation fees, and expert witness fees" pursuant to La.Rev.Stat. 9:367. In response, the father asserted that the Act is unconstitutional because it violates the parent's Fourteenth Amendment due process rights and because it discriminates on the basis of the parent's indigency.[3]
The juvenile court denied the mother's request to modify visitation and ruled that Subsection 364 D is unconstitutional because it denies procedural due process to the allegedly abusive parent. The court concluded that because Subsection 364 D replaces the court's authority to make an individualized determination of the child's best interests with an irrebuttable presumption that termination of visitation and contact is in the best interests of every sexually abused child, there is an unacceptably high risk of erroneous deprivation of significant rights. The court noted that while "a bare preponderance of the evidence" supported the finding of sex abuse in this particular case, the totality of the evidence established that maintaining some positive family relationship between A.C. and her father was in the child's best interest.[4] The court further held that the statute denies access to the courts because it improperly delegates the determination of what constitutes successful completion of a treatment program to experts and mandates that the court give more weight to the testimony of the child's treating therapist than any other testimony.[5]
The mother filed a direct appeal to this court.

The Post-Separation Family Violence Relief Act
The purpose of the Post-Separation Family Violence Relief Act, enacted by La. Acts 1992, No. 1091, is to protect "children and the abused spouse in a family with a history of family violence" from continuation of abuse during periods of child custody and visitation. La.Rev.Stat. 9:361. The portion of the Act under consideration here is La. Rev.Stat. 9:364 D, which requires a court, upon a finding that a parent has sexually abused his or her child, to terminate any visitation or even contact between the abusive parent and the child.[6] After such a finding, the parent can only regain the right to supervised visitation by "successfully completing a treatment program designed for such sexual abusers" and thereafter convincing the court that supervised visitation is in the child's best interest, and arguably may never be able to regain custody or unsupervised visitation.
*747 Subsection 364 D does not expressly require a standard of proof greater than a preponderance of the evidence as a basis for mandatory termination of an allegedly abusive parent's visitation rights. Therein lies a constitutional flaw in Subsection 364 D. A balancing of the factors outlined in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for determining the process that is due in a particular hearing requires the application of a standard of proof by clear and convincing evidence at the factfinding hearing in order to satisfy procedural due process.

The Eldridge Factors and the Santosky Case
In Eldridge, the Court listed three distinct factors in the determination of the nature of the process due in a particular proceeding: (1) the private interest affected by the proceeding; (2) the risk of erroneous deprivation of that private interest by the state's chosen procedure, and the value of any additional or substitute procedural safeguards; and (3) the countervailing governmental interest supporting use of the challenged procedure. Id. at 335, 96 S.Ct. at 903.
In Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Court held that constitutional due process requires application, at the least, of a clear and convincing evidence standard in an action to terminate parental rights based upon a finding in the factfinding hearing that the child is "permanently neglected." Applying the Eldridge factors, the Court first noted that both the nature of the private interest threatened and the permanency of the threatened loss determine whether the loss threatened by the proceeding is sufficient to warrant requiring greater than average certainty in factfinding. An elevated standard of proof had previously been required in juvenile delinquency, civil commitment, deportation and denaturalization proceedings. The Court observed that the factfinding stage focuses primarily on the parent whose rights will be cut off forever by an unfavorable finding in an adversary hearing between the state and the parent. The Court further noted that although the child and the foster parents are deeply interested in the outcome, the child and the parent are not adversaries in the factfinding stage, but share an interest in preventing the erroneous termination of their natural relationship.
The next question was whether the lower standard fairly allocated the risk of an erroneous factfinding between the state and the parent. The Court adverted to the disparity between the parties' litigation resources and to the subjective nature of the evidence arising from encounters among the agency, the parent and the child, factors which the Court characterized as tending to result in underweighing probative facts favoring the parent. The Court then stated that while use of a preponderance standard reflects a nearly neutral social judgment between erroneous termination of parental rights and erroneous failure to terminate, the likely consequence of erroneous failure to terminate is an uneasy status quo, while the actual consequence of an erroneous termination is the unnecessary destruction of the natural family.
The court finally determined that while there is still reason to believe that a positive, nurturing parent-child relationship exists, the government's parens patriae interest favors preserving, rather than severing, natural familial bonds. The goal of the factfinding stageto determine accurately whether the parent can and will provide a normal family relationship with the childis better served by use of the elevated standard.
Accordingly, the Court held that "a near-equal allocation of risk [of erroneous factfinding] between the parents and the State is constitutionally intolerable." 455 U.S. at 768, 102 S.Ct. at 1402.

The Eldridge Factors and the Present Case
In the present case, balancing of the Eldridge factors demonstrates that a preponderance standard is constitutionally intolerable. A parent's interest in a relationship with his or her child is a basic human right. Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). The nature of the private interest threatened by a proceeding under La.Rev.Stat. 9:364 D is the allegedly abusive parent's total loss not only of all visitation rights, but also of all contact of any kind with his or her child. Thus, there is a great deal of similarity between the private *748 interest in this case and the one in the Santosky case. The major difference, of course, is the permanency of the threatened loss. Here, there is a permanent loss of all rights to unsupervised visitation, to overnight visitation even if supervised, and to visitation in the home of the allegedly abusive parent. Moreover, the loss of any chance for supervised visitation is of an uncertain duration which may be beyond the control of the parent. The parent, in addition to proving that supervised visitation is in the child's best interest, must also prove successful completion of a "treatment program"[7] to the judge. But, as the father argues, many treatment programs refuse to accept persons who do not first admit guilt, a fact this father continues to deny.[8] Under such circumstances, an accurate determination of guilt in the factfinding phase is critically important.
The primary private interest involvedthe parent's right to a family relationship with his or her childis an interest that far surpasses any property rights. Santosky, 455 U.S. at 758-59, 102 S.Ct. at 1398-99. As noted above in the discussion of the Santosky decision, the Court has previously required an elevated standard of proof in government-initiated proceedings involving juvenile delinquency, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); civil commitment, Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); deportation, Woodby v. Immigration and Naturalization Serv., 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); and denaturalization, Chaunt v. United States, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960). Here, the government-initiated proceeding threatens the father with a private interest loss that is at least of equal importance to those in the cited cases and with at least partially (and possibly totally) permanent effects.
Admittedly, the Legislature has a legitimate interest in providing for limitation or even termination of parental rights under appropriate circumstances. See La.Ch.Code arts. 1004, 1015. However, under the Children's Code, termination based on criminal conduct involving sexual abuse can only be imposed after proof of guilt beyond a reasonable doubt, and termination based on any other statutory grounds can only be imposed after proof of guilt by clear and convincing evidence, in an adversary proceeding that affords procedural due process. La.Ch.Code art. 1035. By the same token, the legislative sanction in Subsection 364 D that significantly affects the parent's private interest can only operate after the requirements of procedural due process have been met.
The child, as well as the custodial parent, also have vital private interests in the outcome of the proceeding. But, as the Court observed in Santosky, the focus in the factfinding stage (at which the preponderance standard is being challenged) is primarily on the parent. In the factfinding stage of a Subsection 364 D proceeding, the adversaries are the state and the allegedly abusive parent. Until the state proves sexual abuse in a factfinding hearing that provides procedural due process, the parent and the child presumably have a shared interest in preventing the erroneous destruction of the family relationship.
We therefore conclude that the factors relating to the private interest affected by the proceeding weigh heavily in favor of a heightened standard of proof.
The second Eldridge factor involves allocation of the risk of an erroneous factfinding. The preponderance standard allocates the risk of error almost evenly (fifty-one percent minimum). Yet the function of a standard of proof is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual *749 conclusions for a particular type of adjudication." Addington v. Texas, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979), quoting In re Winship, 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). Society obviously is more greatly concerned over error in an action seeking deprivation of parental rights than in a civil action to collect money damages.
Moreover, the court's finding of sexual abuse of the child by the parent in a Subsection 364 D proceeding, when the party with vastly greater resources has proved guilt by a mere preponderance of the generally subjective evidence, absolutely destroys many of the parent's rights and totally removes the discretion of the judge in fixing such rights.[9] On the other hand, if the court fails to find sexual abuse, the trial judge under the Children's Code can still order extremely limited supervised visitation (as was done in this case) or suspend visitation temporarily, or take other steps to protect adequately the welfare of the child and the interest of the custodial parent.
Thus, the consequence of a factfinding error that results in denying the absolute prohibition against visitation and contact is simply a continuation of the previous family relationship between parent and child (a relationship in which the judge under the Children's Code can adequately protect the welfare of the child when necessary under the circumstances). However, the consequence of a factfinding error that results in deprivation of the parent's visitation and contact rights with his or her child, part permanent and part temporary, is the destruction of all or almost all of the existing family relationship that may be worth preserving. This disparity of consequences militates against a standard of proof in which the risk of factfinding error is allocated almost evenly between the state and the parent, and strongly tips the balance in favor of a standard of proof that allocates a higher burden to the state and correspondingly increases the degree of confidence in the correctness of the factfinding process.
One can hardly disagree with the laudable governmental purpose of Subsection 364 D to protect the welfare of abused children or with the proposition that a parent who sexually abuses his or her child should be dealt with as harshly as reasonably necessary to protect the paramount welfare of the child. But the issue at the factfinding stage is whether the abuse in fact occurred, and not whether a parent who has been proved guilty of abuse under a constitutionally adequate standard should be harshly punished. The risk of error in a factual finding of abuse, because of the tremendously uneven consequences resulting from the error, cannot constitutionally be distributed almost evenly between the parties. As in juvenile delinquency, civil commitment, deportation and denaturalization proceedings, due process requires a higher degree of confidence in the correctness of the factfinding process in a Subsection 364 D proceeding.
The final Eldridge factor involves the countervailing governmental interest in use of the procedure. The significant governmental interest in protecting the child's welfare is not in any way deprecated by the application of the higher standard of proof, because alternate protective procedures are readily available. Indeed, the government interest flows in favor of preserving a family relationship that presumably is worth preserving until a reason for contrary action is constitutionally established. The state has almost as great an interest in preserving worthwhile family relationships as it has in terminating family relationships when the parent cannot or will not behave appropriately in the relationship. The government's parens patriae interest therefore is served by protecting against erroneous factual determinations of guilt.
Finally, neither the state nor the mother has shown that the higher standard of proof necessary to reduce the risk of error in the factfinding process will substantially affect *750 the state's administrative or financial burdens in the proceeding.
We therefore conclude that La.Rev.Stat. 9:364 D's failure to require proof of sexual abuse of the child by the parent in a factfinding hearing by clear and convincing evidence renders the statute unconstitutional as violative of the parent's procedural due process rights.
Accordingly, the judgment of the trial court declaring La.Rev.Stat. 9:364 D unconstitutional is affirmed.
DENNIS, J., assigns additional reasons.
HALL, J., dissents for the reasons assigned in the original opinion.
KIMBALL, J., dissents.
DENNIS, Justice, assigning additional reasons.
If the legislature chooses to repair and revive the stricken statute, it should consider and perhaps address several other possible constitutional issues, viz., whether the statute is void for vagueness because it contains no definition of "sexual abuse"; whether it violates due process because it does not require that adequate notice be given; and whether it violates substantive due process because it does not use the least restrictive means available to further the state's interest.
NOTES
[*] Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994; Marcus, J., not on the panel. Rule IV, Part 2, § 3.
[1] The majority struck the portion of La.Rev.Stat. 9:364 D which requires the court to give greater weight to the testimony of the child's therapist than other testimony.
[2] La.Rev.Stat. 9:364 D provides:

If any court finds that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children, until such time, following a contradictory hearing, that the court finds that the abusive parent has successfully completed a treatment program designed for such sexual abusers, and that supervised visitation is in the children's best interest. Any testimony by a licensed mental health professional with training, experience, and expertise in treating sexual abuse victims, who is the therapist for the abused child, shall be given greater weight by the court than other testimony on issues of visitation.
[3] Because the father sought a declaration of unconstitutionality of the statute, the attorney general was served pursuant to La.Civ.Code art. 1880 and has participated in these proceedings.
[4] The factfinding hearing in the present case took place without any notice to the father that he might be subjected to Subsection 364 D sanctions based on its outcome. The mother's position that the finding in the CINC proceeding somehow has a res judicata effect in this Subsection 364 D proceeding (because the father did not seek review) is legally insupportable.
[5] The juvenile court, observing that La.Rev.Stat. 9:367 mandates that the abusive parent pay all costs and fees necessitated by the abuse without any determination of the reasonableness of those costs or the parent's ability to pay, concluded further that La.Rev.Stat. 9:367 is unconstitutional because it is vague and overbroad and denies procedural due process.
[6] The remaining provisions of the Act address other forms of child abuse. A parent with "a history of perpetrating family violence" cannot be awarded custody unless he or she proves completion of a treatment program, as well as the fact that participation as a custodial parent is in the child's best interest. La.Rev.Stat. 9:364 A. Furthermore, under the same circumstances, unsupervised visitation is not allowed unless the parent proves, among other things, treatment program completion and the child's best interest. La.Rev.Stat. 9:364 C.
[7] La.Rev.Stat. 9:362(6) defines "treatment program" as "a course of evaluation and psychotherapy designed specifically for perpetrators of family violence, and conducted by licensed mental health professionals."
[8] OCS submitted a case plan to the trial court for the 1993 CINC review hearing. One goal of the case plan was that the father "will admit the abuse and the extent of the abuse." OCS further referred to the conclusion of a clinical psychologist that the father would not benefit from treatment at this time because of his continued denial of the abuse.
[9] Here, the trial judge in the CINC proceeding resolved the fact issue in favor of protecting the child, although admittedly "by a bare preponderance of the evidence." However, the judge was convinced by other evidence that a positive relationship still existed between AC and her father.