hLANDRIEU, Judge.
This application for supervisory writs arises out of ongoing custody litigation be *73 tween the relator, Janet Avant Snellman, and her former husband, Anthony Bruseato over their child, Christopher. The sole issue is whether the Post-Separation Family Violence Act is applicable to proceedings which were initiated prior to its enactment.

FACTS

Ms. Avant left Mr. Bruseato in June 1988, travelling across the country with Christopher by way of shelters for battered women, and eventually settling in Montana. Meanwhile, Mr. Bruseato initiated custody proceedings asserting that Ms. Avant was suffering from psychological and emotional disorders as evidenced by her “disappearance.” With Ms. Avant represented only by a curator, Mr. Bruseato was awarded provisional custody of Christopher. Based upon this judgment, a civil warrant was issued for Ms. Avant’s arrest to enforce the provisional custody decree. Upon locating the pair in Montana, Mr. Bruseato had Ms. Avant arrested and returned with Christopher to St. Bernard Parish in April 1990. Asserting that she fled with Christopher due to repeated abuse by Bruseato and threats of harm if she left him, Ms. Avant filed a Rule for Custody in July 1990. The trial judge found that Mr. Bruseato was more probable than not a ^perpetrator of domestic violence and stated that he was convinced that Ms. Avant was the victim of some form of physical and/or mental domestic violence during their marriage. In spite of these conclusions, however, the trial judge decided that it was in the best interest of the child to maintain the continuity of a stable home environment and remain with his father. Based on the impracticality of awarding joint custody in light of Ms. Avant’s residence in Montana, the trial court awarded sole custody of Christopher to Mr. Bruseato with reasonable visitation to Ms. Avant.
On appeal, however, this Court found that the trial court did not have enough evidence before it to make such a decision. Specifically, the Court raised three concerns: (1) that, given the numerous allegations concerning the psychiatric status of both parents, the trial court did not have psychiatric evaluations of both parents at its disposal; (2) that the Bruseato home evaluation was insubstantial, particular in light of the evaluator’s suggestion that Christopher’s primary care-taker was his paternal grandmother rather than his father; and (3) that the trial court did not give equal weight to the thorough and extensive evidence obtained through the auspices of a Montana hearing and its home evaluation. Accordingly, the trial court’s judgment was reversed and the matter remanded to the trial court for retrial. See Bruscato v. Bruscato, 593 So.2d 838, 838-839 (La.App. 4th Cir.1992).
Shortly thereafter, the state legislature enacted the Post-Separation Family Violence Relief Act (the Act). Pursuant to this Act, Ms. Avant filed a pleading styled “Rule of Custody” and moved for sole custody based on the trial court’s finding of Mr. Bruscato’s history of spousal abuse. Considering all the provisions of the Act, the trial judge found that “[t]he statutes at issue ... establish new rules, rights and duties specifically relating to relief from family violence that occurs when the victimized family is separated or divorced. Issues include, but are not limited to, a prohibition against court-ordered mediation, custody rights, qualifications of mental health professionals involved, and assessment of costs in family violence case.” Based “on the nature of the statutes,” the trial judge ruled that the statutes were substantive in nature and, accordingly, not applicable in the retrial in this custody matter. Ms. Avant now seeks supervisory review of that ruling.

DISCUSSION

The Legislature enacted the Act based on its findings that:
UtTjhe problems of family violence do not necessarily cease when the victimized family is legally separated or divorced. In fact, the violence often escalates, and child custody and visitation become the new forum for the continuation of the abuse. Because current laws relative to child custody and visitation are based on an assumption that even divorcing parents are in relatively equal positions of power, and that such parents act in the children’s best interest, these laws often work against the protection of the children and the abused spouse in families with a history of family violence. Consequently, laws designed to act *74 in the children’s best interest may actually effect a contrary result due to the unique dynamics of family violence, (emphasis added).
La.Rev.Stat.Ann. 9:361 (West Supp.1995). Thus, although the Legislature expressed no intent as to whether the statutes encompassed by the Act are retroactively applicable, the preamble to the Act clearly indicates that the statute is remedial in nature and that it was designed to be applicable to cases such as the one before us.
Moreover, an analysis of the relevant statutory provisions indicates that the provisions of the Act are procedural in nature and that, therefore, retroactive application of the act will not impact substantive rights of the parties. Although the dichotomy between substantive laws and procedural laws is inexact, ordinarily procedural laws relate to the form of the proceeding or the operation of laws while substantive laws create obligations. See Graham v. Sequoya Corp., 478 So.2d 1223, 1226 (La.1985). Laws which establish a rebuttable presumption are clearly procedural laws. Id. Generally, remedial[1] or procedural statutes which do not enlarge, diminish, or destroy vested or contractual rights but relate only to remedies or modes of procedure operate retrospectively and apply to pending actions or proceedings unless such action adversely effects substantive rights. Rodriguez v. Brown & Root, Inc., 410 So.2d 325, 327 (La.App. 4th Cir.1982) (citations omitted).
Three provisions of the Act are of particular interest in this ease. First, La. Rev.Stat.Ann. 9:364(A) (West Supp.1995)[2] provides as follows:
14There is created a presumption that no parent who has a history of perpetuating family violence shall be awarded sole or joint custody of children. The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined herein, is not abusing alcohol and the illegal use of drugs scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent’s participation as a custodial parent because of the other parent’s absence, mental illness or substance abuse, or such other circumstances which affect the best interest of the child or children. The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody, (emphasis added).
To the extent that this provision establishes a burden of proof, as well as a rebutta-ble presumption, it is clearly procedural in nature and therefore applicable to pre-exist-ing facts and relations. See Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331, 1339 (La.1978).
Next, La.Rev.Stat.Ann. 9:365 (West Supp. 1995) provides as follows:
Any mental health professional appointed by the court to conduct a custody evaluation in a case where family violence is an issue shall have current and demonstrable training and experience working with perpetrators and victims of family violence.
This provision establishes a new rule as to the qualifications of court-appointed professionals and therefore does not impact a substantive right of a litigant. In any event, this Court has already expressed dissatisfaction with the sufficiency of the expert evidence used by the trial court in determining that it was in Christopher’s “best interest” to remain with his father. See 593 So.2d at 840-41. Accordingly, even without a statutory mandate to appoint someone schooled in the dynamics of spousal abuse to conduct an evaluation for the court, the facts of this case
*75 suggest that the trial court would be wise to do so.
Finally, La.Rev.Stat.Ann. 9:364(C) (West Supp.1995) provides as follows:
If the court finds that a parent has a history of family violence,[3] the court shall only allow supervised child visitation with that parent, conditioned upon that parent’s participation in and completion of a treatment program. Unsupervised visitation shall only be allowed if it is shown by a preponderance of the evidence that the violent parent has successfully completed a treatment program, is not abusing alcohol and psychoactive drugs, poses no danger to the child, and that such visitation is in the child’s best interest.
It has always been within the discretion of the trial court to structure visitation in the best interest of the child and, implicitly, impose limitations upon a violent or abusive parents access to the child. Accordingly, explicit requirements that such a parent complete a|Btreatment program and refrain from abusing alcohol or psychoactive drugs does not affect a parent’s substantive rights. The Louisiana Supreme Court held that a similar provision of the Act, La.Rev.Stat. 9:364(D)[4] unconstitutional because it required proof of sexual abuse by a preponderance of evidence standard rather than by clear and convincing evidence. State in the Interest of A.C., 93-1125 (La.10/17/94), 643 So.2d 743 (on rehearing). The Court made clear, however, that its sole concern was the appropriate standard of proof and not “the power or the wisdom of the Legislature’s imposing a significant limitation on the visitation and contact rights of a parent whom the court, after a hearing on the issue, has found to have sexually abused his or her child.” Id. at 744-45. Accordingly, the Legislature recently amended the provision to require proof of parental sexual abuse by clear and convincing evidence. 1995 La.Sess.Serv. Act 888.
In addition, several other provisions are applicable to this case. Section 367 mandates that the trial judge award costs and fees, including all costs of medical and psychological care for the abused spouse or for any of the children which is necessitated by the family violence, to the victims of the violence. Likewise, § 366 provides for an injunction against family violence to be contained in orders or judgments rendered in family violence eases. Finally, § 363 prohibits the court from ordering an abused spouse to participate in mediation and § 369 prohibits public funds allocated to victims of family violence from being used to provide services to perpetrator of domestic violence. Prior to the Act, it was always within the trial court’s discretion to award costs and fees to a litigant or to enjoin a party from violent action and there were no requirements to order mediation or use public funds contrary to the allocation purposes. Consequently, none of these provisions are substantive in nature.
For the foregoing reasons, we find that the Post-Separation Family Violence Relief Act is retroactively applicable. Relator’s application for supervisory writs is granted and, upon retrial of the custody issue, the trial court is instructed to consider the pertinent provisions of the Act.

WRIT APPLICATION GRANTED.

. La.Civ.Code Ann. art. 6 (West 1993) makes no reference to remedial laws, but this omission is due to the multiplicity of meanings assigned to "so-called remedial legislation,” rather than a purposeful decision not to recognize remedial laws. See La.Civ.Code art. 6 (West 1993), Revision Comment (d), and caselaw cited therein.

. This section was amended by the Louisiana legislature to include: "The court may find a ‘history of perpetrating family violence’ if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more that one incident of family violence.” 1995 La.Sess.Law Serv. Act 888 (S.B. 777) (West) Slip Copy.

. The Louisiana Legislature amended this sentence to read as follows: "If the court finds that a parent has a history of perpetrating family violence....” 1995 La.Sess.Law Serv. Act 888 (emphasis added).

. That provision prohibited all visitation and contact between the abusive parent and the child until such time, following a contradictory hearing, that the court found that the abusive parent had successfully complete a treatment program and the visitation was in the child’s best interest.