323 So.2d 904 (1975)
Bruce Wayne RAY, Plaintiff-Appellant,
v.
BIRD & SON, INC., et al., Defendants-Appellees.
No. 12778.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1975.
*905 James B. O'Neill, Zwolle, for plaintiff-appellant.
Cook, Clark, Egan, Yancey & King, by Herschel E. Richard, Jr., Shreveport, for defendant-appellee-Bird & Son, Inc.
Bodenheimer, Jones, Klotz & Simmons, by G. M. Bodenheimer, Jr., Shreveport, for defendants-appellees-Melton Truck Lines, Inc., Earl Martin, Nez and Louis W. Sanders.
Before HALL, GLADNEY and HEARD, JJ.
HALL, Judge.
This action for damages arises out of a collision between an automobile and a tractor-trailer unit. Plaintiff is Bruce Wayne *906 Ray, driver of the automobile. Defendants are (1) Louis Sanders, driver of the tractor-trailer; (2) Earl Martinez, owner of the tractor; (3) Melton Truck Lines, Inc., owner of the trailer, and lessee of the tractor; and (4) Bird & Son, Inc., from whose loading docks the tractor-trailer was proceeding at the time of the accident.
After trial on the merits, the district court, for reasons orally expressed from the bench at the conclusion of the trial, found the accident was caused by plaintiff's negligence in driving while intoxicated and in failing to keep a proper lookout and to keep his vehicle under proper control. Judgment was rendered rejecting plaintiff's demands, and plaintiff appealed. We affirm the judgment of the district court.
The testimony of plaintiff, defendant Sanders, the investigating state troopers, two eye witnesses, and Ray Heard, Supervisor of the Northwest Crime Laboratory in Shreveport and an accident reconstruction expert, establishes the following facts. The accident happened on Aero Drive in Shreveport on January 17, 1974, at about 9:00 o'clock p.m. Aero Drive is a two lane hard surface street running east and west between North Market Street to the east and Hearne Avenue extension to the west. At the scene of the accident, the Bird & Son roofing plant and loading docks are located on the north side of Aero Drive. At the scene of the accident, the street is straight and level.
After his low-boy or flat-bed trailer was loaded at the loading docks, Sanders drove his unit to the north edge of the street, stopped, and looked both ways for traffic on Aero Drive. He saw the headlights of plaintiff's automobile traveling in a westerly direction on Aero Drive. Sanders estimated plaintiff's position at that time as being close to the North Market Street intersection a distance of two-tenths of a mile to the east. Sanders thought he had ample time to pull out into Aero Drive and make a left turn. Sanders drove out onto Aero Drive, turned left, and proceeded about 50 feet with his tractor in its proper right-hand lane headed east and with the trailer angled across the street, completely blocking the west-bound lane in which plaintiff was traveling. At this point, plaintiff's automobile ran under and into the trailer, totally demolishing the automobile and resulting in serious injuries to plaintiff who was rendered unconscious by the impact.
Plaintiff testified he was traveling in the west-bound lane at between 30 and 40 miles per hour. The witness, Heard, based solely on examination of photographs of the vehicles taken at the accident scene, expressed the opinion plaintiff was going 35 miles per hour upon impact. The speed limit was 35 miles per hour. Plaintiff testified he saw the headlights of the truck pull out into the street and make the left-hand turn, but he thought it was an automobile and did not realize it was a tractor-trailer unit. He did not see the running lights on the side of the tractor-trailer which were on at the time. When he first saw the headlights pull out and make the left turn, he took his foot off the accelerator but then put his foot back on the accelerator until he realized that the trailer was blocking his lane of travel. At this point he made no effort to stop his automobile but slipped down under the steering wheel as the automobile went under the trailer. Plaintiff testified he was only two or three car lengths from the trailer when he first saw it. Under all the evidence, plaintiff must have been several hundred feet from the point of impact when the tractor-trailer first pulled out onto Aero Drive.
According to plaintiff's own testimony, he got off from work about noon of the day of the accident and went to a lounge where he consumed eight to ten bottles of beer during the afternoon. He left the lounge, drove around, got something to eat, and went back to the lounge where he bought another bottle of beer. He drank *907 half of this bottle, left the lounge taking the bottle with him, and proceeded down Aero Drive where the accident happened a few minutes later. Plaintiff testified he drank beer in similar quantities on a regular basis, that he did not think he was drunk, but conceded he was intoxicated or "feeling good."
Blood was taken from plaintiff about one hour and forty minutes after the accident and was reported by the Northwest Crime Lab as having an alcoholic content of .09. Plaintiff's witness, Heard, was of the opinion plaintiff's blood alcohol content at the time of the accident would have been approximately .12, which is sufficient to significantly impair a driver's perception and reaction abilities.
The two eye witnesses verified the fact that plaintiff was at least several hundred feet from the point of impact at the time the tractor-trailer unit pulled out onto Aero Drive and commenced its left turn. Plaintiff himself conceded that he could easily have stopped his automobile at the time he first noticed the headlights pull out into the street and make the left turn.
Pretermitting a discussion of the negligence, if any, of the driver of the tractor-trailer, it is manifest from the evidence, including particularly plaintiff's own version of how the accident happened, that plaintiff's negligence in driving while intoxicated, in failing to observe the trailer across the street, and in failing to bring his automobile to a stop, was at least a contributing legal cause, if not the sole legal cause, of the accident. Plaintiff is barred from recovery by his own negligence. The decision of the district court is eminently correct.
In addition to plaintiff's primary specification of error on the issue of liability, plaintiff also specifies the district court erred in overruling plaintiff's objection to the setting of the case for trial and motion for continuance and in denying plaintiff's verbal motion to recuse made at the beginning of the trial.
Plaintiff's objection to the setting for trial and motion for continuance was grounded on allegations that plaintiff's attorney had insufficient time to engage an expert witness, had pressing family and personal matters to attend to, and that plaintiff was employed out of state and the trial setting would disrupt his employment. None of the alleged reasons are peremptory grounds for a continuance under LSA-C.C.P. Art. 1602. The trial court has a wide discretion in the granting or denying of a continuance. There is no showing that the trial court's discretion was abused or that the plaintiff was prejudiced in any manner by the denial of the continuance. Plaintiff's expert witness was present and testified. Trial was held approximately five months after the suit was filed, and approximately seventeen months after the date of the accident. There is no indication that any additional evidence would have been available to plaintiff at any later date.
At the commencement of the trial, plaintiff's attorney verbally moved to recuse the trial judge because the judge had previously heard a traffic violation case against the tractor-trailer driver, arising out of this same accident. The motion for recusation was denied by the trial judge. Plaintiff urges the judge should have been recused under LSA-C.C.P. Art. 151, which provides that a judge may be recused when he "has performed a judicial act in the cause in another court."
LSA-C.C.P. Art. 154 provides that a party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. No written motion was filed in this instance, and therefore the judge was not required to either recuse himself or refer the motion to another judge for a hearing. Additionally, the fact that the trial judge heard a traffic violation matter arising out *908 of the same accident does not constitute the performance of a judicial act "in the cause" in another court. The traffic violation matter is a separate and distinct "cause" from the civil damage suit. Plaintiff's oral motion to recuse was properly denied. See McNeill v. Continental Casualty Company, 244 So.2d 693 (La.App. 4th Cir. 1971).
For the reasons assigned, the judgment of the district court is affirmed at appellant's cost.
Affirmed.