JUDGE SANDRA CABRINA JENKINS
This appeal arises from a dispute between the executors of two successions over the right to receive settlement payments for damage to oyster leases caused by the Deepwater Horizon oil spill in 2010. Appellant, Helen Scott Ehle Barrois ("Helen"), is the executrix of the succession of Antoinette Bernice Cognevich Barrois ("Bernice"). Appellees, Russell E. Barrois, Jr. and Kenneth B. Barrois, Jr. (the "Mancil Executors"), are the co-executors of the succession of Bernice's husband, Mancil Joseph Barrois ("Mancil"). Helen appeals the trial court's judgments: (1) granting the Mancil Executors' Motion for Summary Judgment; (2) denying her Motion for New Trial; and (3) denying her Exception of Prescription. For the reasons that follow, we amend the judgment granting summary judgment in favor of the Mancil Executors and, as amended, affirm. We also affirm the judgment denying Helen's Motion for New Trial, and the judgment denying Helen's Exception of Prescription.
FACTUAL AND PROCEDURAL BACKGROUND
The Barrois Successions
In 1930, Mancil and Bernice were married, and thereafter resided in Plaquemines Parish. In the 1960s and 1970s, during their marriage, Bernice applied for and acquired eight oyster leases from the State of Louisiana. In 1975, Mancil died testate, and in 1978, Mancil's succession (the "Succession of Mancil") was judicially opened in the 25th Judicial District Court for the Parish of Plaquemines. In 1981, Bernice died intestate, and in 1983, Bernice's succession (the "Succession of Bernice") was judicially opened in Plaquemines Parish. The two successions were consolidated in 1984. To date, both successions remain *125 open. In forty years, no judgments of possession have been rendered.
Before Mancil's marriage to Bernice, he had been married twice, first to Melanie Bruney ("Melanie"), from whom he was divorced, and second to Flora Messimore ("Flora"), who predeceased him in 1929. There were four children born of Mancil's first two marriages. The Mancil Executors are the direct descendants of Mancil and his second wife, Flora. During Mancil's third marriage to Bernice, two children were born, Austin Francis Barrois ("Austin") and Bernita Joan Barrois ("Bernita").
In 1989, Austin was named sole administrator of Bernice's estate. In 1990, Bernita renounced her mother's succession, and all of Bernita's interest was adjudicated to her brother, Austin. Austin died testate in 2011, and bequeathed his entire estate to his wife, Helen. In 2012, Helen opened Austin's succession (the "Succession of Austin") in Plaquemines Parish, and was named independent testamentary executrix. In December 2014, Helen was named the independent executrix of the Succession of Bernice.
BP Oil Spill Settlement
In 2013, Helen retained attorneys to file a $384,000.00 claim with the Deepwater Horizon Claims Center ("BP Claims Center") for damage to the Barrois oyster leases caused by the BP oil spill in 2010. As of the date of the summary judgment at issue in this case, the BP Settlement Trust ("BP Trust") had paid Helen an initial disbursement of $384,000.00, and a second payment of $155,725.33, for a total of $539,725.33. Helen deposited these funds in her personal checking account. With these funds, Helen paid her attorneys $137,874.46 (20 percent), purchased a $200,000.00 annuity, and then depleted the remaining funds.[1] Helen did not pay any of these BP settlement funds to the Mancil Executors.
Lawsuit by Mancil Executors
On April 1, 2014, the Mancil Executors filed a "Petition for Delivery of Funds and Property, for Accounting, for Declaratory Judgment, for Sequestration, for Damages and for Other Relief" (the "Petition") against Helen individually, and as the independent testamentary executrix of the Succession of Austin. In the Petition, the Mancil Executors asserted that, because the oyster leases were the community property of the Mancil and Bernice successions, Helen had: (1) wrongfully asserted full ownership of the oyster leases; (2) wrongfully converted monetary compensation owed to the Succession of Mancil; (3) wrongfully failed to turn over such compensation to the Succession of Mancil; and (4) wrongfully failed to account to the Succession of Mancil for proceeds derived from the oyster leases.
Motions for Partial Summary Judgment
In January 2015, Helen, individually, and as the independent executrix of the Succession of Bernice, filed a Motion for Partial Summary Judgment seeking a declaration that the oyster leases were the separate property of Bernice and, upon her death, were the separate property of *126 the Succession of Bernice. In March 2015, the Mancil Executors filed a Cross Motion for Partial Summary Judgment seeking a declaration that the oyster leases were community property, and that the money derived from the oyster leases, including the BP settlement funds, were community property. The Cross Motion for Partial Summary Judgment further stated, "[i]f the Court grants partial summary judgment as requested, the Mancil Succession further moves the Court to order [Helen] to deliver one-half of all payments and distributions from [the BP settlement fund] to the co-executors of the Mancil Succession."
On April 10, 2015, the trial court granted the Mancil Executors' Motion for Partial Summary Judgment, and denied Helen's Motion for Partial Summary Judgment. In the judgment, the trial court decreed that the oyster leases acquired by Bernice during her marriage to Mancil were community property. The trial court, however, did not order Helen to pay the Mancil Executors one half of the BP payments. On April 21, 2015, the Mancil Executors filed a Motion to Amend and Supplement the Judgment, asking the trial court to order Helen to pay one half of the BP settlement funds to the Succession of Mancil. The trial court denied the motion pursuant to La. C.C.P. art. 1951, which authorizes amendment of judgments only to "alter the phraseology of the judgment, but not its substance, or to correct errors of calculation."
In May 2015, Helen appealed the April 10, 2015 judgment. The Mancil Executors filed an Answer to Appeal in which they asked the court to modify the trial court's judgment to instruct Helen to pay one half of the BP settlement funds to the Succession of Mancil.
Fourth Circuit: Oyster Leases Are Community Property
On January 6, 2016, this court affirmed the trial court's April 10, 2015 judgment declaring that the oyster leases were community property. In re Succession of Barrois , 15-0692, 15-0693 (La. App. 4 Cir. 1/6/16), 184 So.3d 230, writ denied , 16-0395 (La. 4/15/16), 191 So.3d 592. The court found that "because oyster lease rights are heritable, under both Louisiana community property law and Louisiana oyster lease law, an undivided one-half interest in the leases passed into Mancil's succession and a one-half interest passed into Bernice's succession." Id. , 15-0692, p. 6, 184 So.3d at 234. The appeals court agreed with the trial court that "the oyster leases acquired during the marriage of Bernice and Mancil Barrois are community property," and that "upon Mancil's death, one-half interest of those leases became part of his estate." Id. , 15-0692, 184 So.3d at 235. The court denied the Mancil Executors' Answer to Appeal.
Second Motion for Summary Judgment
On August 10, 2016, the Mancil Executors filed a second Motion for Summary Judgment seeking: (1) a full and complete accounting from Helen as to all money or other things of value that Helen had received from the oyster leases; (2) a "money judgment" in favor of the Mancil Executors and against Helen in the amount of 50% of all monies or other things of value received by Helen from the oyster leases; and (3) a judgment that Helen immediately pay over to the Mancil Executors 50% of the amount of all monies or other things of value received by Helen from the oyster leases.
On October 19, 2016, the Mancil Executors filed a Supplemental and Amended Motion for Summary Judgment, requesting the following supplemental relief: (1) a "money judgment" in favor of the Mancil *127 Executors and against Helen in the amount of 50% of all money or other things of value received by Helen, or which Helen receives in the future, from the oyster leases; (2) a judgment declaring that the Mancil Executors are entitled to receive the next $539,725.33 paid by the BP settlement fund, and after the payment of this amount, are entitled to 50% of all further payments made.[2]
On December 29, 2016, the trial court signed a judgment granting the Mancil Executors' Motion for Summary Judgment. Specifically, the judgment in favor of the Mancil Executors and against Helen provides the following relief:
(1) Ordering that Helen immediately provide a full and complete accounting for all money or other things of value that Helen has received relating in any manner to the oyster leases at issue in the lawsuit.
(2) A money judgment in favor of the Mancil Executors and against Helen in the amount of 50% of all monies or other things of value received by Helen with regard to the ownership, use or damage to the oyster leases that are the subject of this lawsuit.
(3) Judgment ordering that Helen immediately pay over to the Mancil Executors 50% of all monies or other things of value received by Helen with regard to the oyster leases that are the subject of this lawsuit.
(4) A money judgment in favor of the Mancil Executors and against Helen in the amount of 50% of all money or other things of value received by Helen or which Helen receives in the future with regard to the ownership, use or damage to the oyster leases that are the subject of this lawsuit.
(5) Judgment declaring that the Mancil Executors are the owners of and are entitled to receive from the Deepwater Horizon Settlement Program the next $539,725.33 to be paid from the Settlement Program on the claims previously asserted in the name of Austin F. Barrois (who is now dead and whose successor claimant is Helen E. Barrois) with regard to the oyster leases whether as a result of a Seafood Program claim or as a result of a claim under the HESI Punitive Damages and Assigned Claims Settlement and the Transocean Punitive Damages and Assigned Claims Settlement Agreement. Further the judgment is to declare that after payment to the Mancil Executors of that $539,725.33, the Mancil Executors are then entitled to payment from any further settlement 50% of all further payments with regard to the Austin/Helen claims.
(6) Costs as to their motion are assessed against Helen Barrois.
Helen's Motion for New Trial
Thereafter, Helen filed a Motion for New Trial, arguing that the December 29, 2016 judgment should be vacated because the Mancil Executors failed to post a security *128 bond, as required for a writ of sequestration. Helen also argued that because she did not receive all of the $539,725.33 from the BP settlement fund, the Mancil Executors were not entitled to half of this sum as their share of the community property. On January 19, 2017, the trial court denied Helen's Motion for New Trial.
Helen's Exception of Prescription
On October 19, 2016, Helen filed a Peremptory Exception of Prescription, arguing that the right of recovery of Mancil's heirs from his first two marriages was barred by the 30-year liberative prescriptive period in La. C.C. art. 3502. According to Helen, because these heirs "had not filed a pleading, document or record of any kind in Mancil's Succession," their claims are prescribed, so that she is the sole successor (as the universal legatee of Austin) to all property of both the Mancil and Bernice estates. On February 14, 2017, the trial court denied Helen's Exception of Prescription.
On March 17, 2017, Helen filed a Motion for Devolutive Appeal of the December 29, 2016 judgment granting the Mancil Executors' Motion for Summary Judgment, the January 19, 2017 judgment denying Helen's Motion for New Trial,[3] and the February 14, 2017 judgment denying Helen's Exception of Prescription.
DISCUSSION
In this appeal, Helen lists four assignments of error:
(1) The trial court erred by improperly granting summary judgment despite the presence of disputed issues of material fact and the complete absence of legal authority for its actions.
(2) The trial court erred by improperly issuing a sequestration order with no bond.
(3) The trial court's judgment improperly ordered payment of 50% of all BP settlement funds released to date as well as $539,725.33 in future funds, which constitutes a double or triple open-ended award of the maximum amount possibly at issue.
(4) The trial court erred in denying Helen's Peremptory Exception of Prescription, which would have terminated this litigation.
Assignment of Error Nos. 1 and 3: Motion for Summary Judgment
We address these two assignments of error together, as they both relate to the trial court's summary judgment.
Appellate courts review the granting of a motion for summary judgment under the de novo standard of review. Filmore Parc Apartments II v. Foster , 16-0568, pp. 3-4 (La. App. 4 Cir. 2/15/17), 212 So.3d 621, 624. "Appellate courts use the 'same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.' " Id. , 16-0568, p. 4, 212 So.3d at 624 (quoting Weintraub v. State Farm Fire & Cas. Co. , 08-0351, p. 2 (La. App. 4 Cir. 10/29/08), 996 So.2d 1195, 1196-97 ).
Helen contends that the trial court made factual and legal errors in granting summary judgment in favor of the Mancil Executors. First, she argues that there is a disputed issue of material fact as to how *129 much money she received from the BP settlement fund. Helen asserts that she received only $401,850.87, which were the "net" proceeds after payment of her legal fees. We disagree. The record reflects that, up through the date of the summary judgment at issue here, BP paid Helen in two disbursements of $384,000.00 and $155,725.33 as compensation for her claim for damage to the oyster leases. Helen, who hired several attorneys to represent her in the claims process, then allowed her attorneys to deduct $137,874.46 from the settlement to pay her attorney's fees. It is not disputed that the entire $539,725.33 was paid to Helen.
Helen also argues that, as a matter of law, upon Austin's death, she became the owner of at least a 7/9th share of the oyster leases and BP payments, and that the Mancil heirs (other than Austin) own at most 2/9th of the oyster leases and BP payments. According to Helen, the trial court erred in not awarding her 7/9th of the $401,850.87 "net" proceeds (after payment of her legal fees), or approximately $309,425.00. She also contends that the trial court should have awarded the Mancil Executors only 2/9th of this amount, or approximately $92,425.00.
Helen is confusing two separate issues in this case. The issue before this court on summary judgment is how the BP settlement proceeds are to be split between the two successions. The issue of what fractional share of the BP proceeds will go to each Barrois heir/legatee after administration of the two successions is not before the court.[4] Helen, nevertheless, spends much of her brief explaining how to calculate her share of the BP settlement funds that will be disbursed personally to her through a judgment of possession in the Mancil and Bernice successions. She also devotes a significant part of her brief addressing whether the heirs' fractional shares are to be taken from the "net" or the "gross" settlement proceeds (before and after payment of attorney's fees). We find that Helen's argument is premature, and thus is immaterial for purposes of our review of the trial court's summary judgment.
Despite the mathematical complexities presented by Helen, the resolution of this issue is relatively straightforward. In 2016, this court established that, as a matter of law, the Succession of Mancil owns 50% of the community-property oyster leases, and the Succession of Bernice owns the other 50%. In granting summary judgment, the trial court found that the Succession of Mancil is entitled to 50% of the total compensation paid by BP for damage to the oyster leases, and the Succession of Bernice is entitled to the other 50%. The trial court, therefore, split the past and future BP proceeds 50/50 between the two successions. We find no error in that decision.
Double/Triple Recovery
Helen contends that the trial court improperly awarded the Mancil Executors "double or triple" the amount due by requiring Helen to pay them 50% of all amounts already paid to her, and then giving the Mancil Executors "the next $539,725.33." We agree.
The trial court correctly rendered a "money judgment" in favor of the Mancil Executors and against Helen in the amount of 50% of all money or other *130 things of value already received by Helen, or which Helen may receive in the future, with respect to the oyster leases, which includes the BP settlement proceeds. The relief awarded in Section 3 and Section 5 of the judgment, however, creates inconsistencies within the judgment.
Section 3 orders "that Helen immediately pay over to the Mancil Executors 50% of all monies or other things of value received by Helen with regard to the oyster leases." Section 5 declares that the Mancil Executors are entitled to receive the "next $539,725.33 to be paid from the BP Settlement Fund." We understand that, because additional BP settlement payments were anticipated, the trial court's intent was to "equalize" the amounts due to the two successions by ordering that the Mancil Executors be paid the next $539,725.33 from the BP settlement payments (the same amount already received by Helen).
The result, however, is that Helen must "immediately pay over" to the Mancil Executors the sum of $269,862.66, and thereafter, the Mancil Executors shall receive the "next" $539,725.33 paid by BP. The Mancil Executors, therefore, will receive $809,587.99, while Helen will receive only $269,862.66. Thereafter, the two successions will split the BP payments on a 50/50 basis. The trial court's judgment plainly does not "equalize" the payments to each succession.
Pursuant to the authority granted under La. C.C.P. art. 2164 to "render any judgment which is just, legal, and proper upon the record on appeal," we accordingly amend the December 29, 2016 judgment to strike out Section 3. We also strike Section 2, which is repeated in Section 4. Accordingly, we amend the trial court's judgment as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment by the Mancil Executors and against Helen is hereby GRANTED. Accordingly, there is Judgment herein in favor of the Mancil Executors and against Helen Scott Ehle Barrois as follows:
(1) Ordering that Helen immediately provide a full and complete accounting for all money or other things of value that Helen has received relating in any manner to the oyster leases at issue in the lawsuit. The leases "at issue in this lawsuit" include but are not limited to the following listed leases:A. Lease 2746699 containing approximately 4 acres, Bayou Rucich, Plaquemines, LA;
B. Lease 2746799 containing approximately 13 acres, Scofield Bay, Plaquemines, LA;
C. Lease 2884807 containing approximately 162 acres, Scofield Bay, Plaquemines, LA;
D. Lease 3272407 containing approximately 4 acres, Scofield Bay, Plaquemines, LA;
E. Lease 3272507 containing approximately 1 acre, Scofield Bay, Plaquemines, LA; and
F. Lease 3272607 containing approximately 8 acres, Scofield Bay, Plaquemines, LA.
The accounting is to specifically include any and all money received from British Petroleum ("BP") or from the Deepwater Horizon Settlement Program relating to the 2010 oil spill. The accounting shall include a complete statement of all money received, all fees or other expenses paid in connection with the receipt of that money, the disposition of the money, the current whereabouts of the money or of any other things of value purchased by use of the money. If the money has been spent or donated, *131 the accounting must include the details of all such expenditures or donations including particularly the names, addresses, email addresses, and phone numbers of recipients of any such money. The accounting shall also include the production of all documents relating to the receipt, disposition, use and current whereabouts of the money and of anything of value purchased or obtained by use of the money.
(2) A money judgment in favor of the Mancil Executors and against Helen in the amount of 50% of all money or other things of value received by Helen or which Helen receives in the future with regard to the ownership, use or damage to the oyster leases that are the subject of this lawsuit.
(3) Judgment declaring that the Mancil Executors are the owners of and are entitled to receive from the Deepwater Horizon Settlement Program the next $539,725.33 to be paid from the Settlement Program on the claims previously asserted in the name of Austin F. Barrois (who is now dead and whose successor claimant is Helen E. Barrois) with regard to the oyster leases whether as a result of a Seafood Program claim or as a result of a claim under the HESI Punitive Damages and Assigned Claims Settlement and the Transocean Punitive Damages and Assigned Claims Settlement Agreement. Further the judgment is to declare that after payment to the Mancil Executors of that $539,725.33, the Mancil Executors are then entitled to payment from any further settlement 50% of all further payments with regard to the Austin/Helen claims. The Deepwater Horizon Settlement Program claim designation that is the subject of this order is:Claimant Name: Austin F. Barrois (Austin F. Barrois is now deceased and his successor claimant is Helen E. Barrois)
Claimant ID: 100091915
Claim Type: Seafood Compensation Program
Claim ID: 129796
(4) Costs as to their motion are assessed against Helen Barrois.
As amended, and in all other respects, we affirm the trial court's December 29, 2016 judgment.
Assignment of Error No. 2: Sequestration Without Bond
Helen contends that the Mancil Executors' Petition, "in effect," was an improper writ of sequestration without a bond. Helen also argues that, because this Court in 2014 reversed the trial court's sequestration order against Helen on the grounds that the Mancil Executors did not post a bond, this Court should likewise vacate the trial court's December 29, 2016 judgment.
On April 1, 2014, the Mancil Executors filed a "Rule for Sequestration" without bond,[5] in which they sought an order directing the Sheriff to seize all funds received by Helen from the BP settlement, and placing the sum of $384,000.00 in the registry of the court. On July 24, 2014, the trial court signed a judgment ordering Helen to deposit $40,000.00 in cash into the registry of the court within five business days. The trial court also decreed that Helen could not sell, transfer, encumber, or otherwise alienate the $200,000.00 annuity contract that she purchased in July 2013. Helen filed an application for supervisory *132 writs. On August 21, 2014, this Court granted Helen's writ application, and vacated the July 24, 2014 judgment based on the trial court's failure to set an appropriate bond under La. C.C.P. arts. 3574 (sequestration) and 3610 (injunction). Succession of Barrois , 14-0846 (La. App. 4 Cir. 8/21/14) (unpub.).
On August 11, 2015, after the trial court's April 10, 2015 judgment decreeing that the oyster leases acquired by Bernice during her marriage to Mancil were community property, the Mancil Executors filed a "Motion to Sequester Funds and to Set Security for Sequestration." Again, the Mancil Executors sought a court order directing Helen to deposit into the registry of the court one-half of the money she received from the BP settlement. On August 13, 2015, the trial court denied the Motion to Sequester for failure to comply with La. C.C.P. art. 3501, which requires that the applicant furnish security.
Sequestration is a provisional remedy available for the seizure of property as to which the seizing party claims a property, possessory, or security interest, to prevent the disposal or concealment of the property by another party. La. C.C.P. arts. 3501, et seq. The writ of sequestration is "intended to preserve property pending the outcome of a judicial proceeding." Grantt Guillory Enters., Inc. v. Quebedeaux , 12-931, p. 9 (La. App. 3 Cir. 2/6/13), 110 So.3d 182, 189 (citation omitted).
In 2014 and 2015, when the Mancil Executors filed their rules for sequestration, the trial court had not yet rendered its judgment ordering Helen to pay 50% of the BP settlement funds to the Succession of Mancil. A writ of sequestration, therefore, was the appropriate procedural mechanism to prevent Helen from dissipating the settlement funds pending the outcome of the Mancil Executors' claim for these proceeds.
On December 29, 2016, however, the trial court rendered a money judgment in favor of the Mancil Executors and against Helen in the amount of 50% of all money already received by Helen, or received in the future, with regard to the ownership, use, or damage to the oyster leases. This judgment was not a provisional remedy to preserve the status quo pending a judgment on the merits. This was a judgment on the merits.
Accordingly, we find no merit to this assignment of error.
Assignment of Error No. 4: Exception of Prescription
Helen argues that because the claims of the other Mancil heirs are prescribed, she is the sole heir to the Succession of Mancil.
When no evidence is introduced to support or controvert a peremptory exception of prescription, "the judgment is reviewed simply to determine whether the trial court's decision was legally correct." Wells Fargo Fin. Louisiana, Inc. v. Galloway , 17-0413, p. 8 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 800. A de novo standard of review applies. Id.
Louisiana Civil Code article 3502 provides:
The action for the recognition of a right of inheritance and recovery of the whole or part of a succession is subject to a liberative prescription of thirty years. This prescription commences to run from the day of opening of the succession.
Helen contends that because Mancil died in 1975, the 30-year prescriptive period ended in 2005. According to Helen, at that time none of the Mancil heirs had filed a pleading, document or record of any kind in Mancil's Succession for recognition of their right of inheritance and recovery.
*133 The Mancil Executors cite Fleniken v. Allbritton, 566 So.2d 1106 (La. App. 2d Cir.1990), in which the court held that the liberative prescription period of 30 years applicable to an action for recognition of the right of inheritance and recovery of whole or part of a succession does not accrue when the parties hold the succession property as co-heirs or co-owners in indivision. This Court agreed with Fleniken in In re Succession of Moore , 97-1668, 97-1669, p. 19 (La. App. 4 Cir. 4/1/98), 737 So.2d 749, 759-60. See also La. C.C. art. 3502, Editor's note (" article 3502 should not be read to mean that non-action by a successor for thirty years operates as a liberative prescription on an heir claiming ownership of property he inherited from the decedent").
"Succession occurs at the death of a person." La. C.C. art. 934. "Immediately at the death of the decedent, universal successors acquire ownership of the estate...." La. C.C. art. 935. "Universal successors" is a term of art defined in La. C.C. art. 3506(8) to include heirs by intestacy and general and universal legatees. "Ownership of the same thing by two or more persons is ownership in indivision," or co-ownership. La. C.C. art. 797. Thus, we find that all of the Mancil heirs (which include Helen) are co-owners in indivision of the succession property of Mancil. The 30-year prescriptive period in La. C.C. art. 3502, therefore, does not accrue. Accordingly, the trial court's decision to deny Helen's Exception of Prescription is legally correct.
CONCLUSION
For the reasons stated above, we amend the trial court's December 29, 2016 judgment granting the Mancil Executors' Motion for Summary Judgment and, as amended, we affirm. We also affirm the trial court's January 19, 2017 judgment denying Helen's Motion for New Trial, and the February 14, 2017 judgment denying Helen's Exception of Prescription.
JUDGMENT ON SUMMARY JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED; JUDGMENT DENYING MOTION FOR NEW TRIAL AFFIRMED; JUDGMENT DENYING EXCEPTION OF PRESCRIPTION AFFIRMED

After the trial court's December 29, 2016 judgment was rendered, BP made a third payment to Helen of $149,336.54. Out of this, Helen paid her attorneys $29,889.31. On March 9, 2017, Helen's attorney filed a Motion to Deposit Funds into Registry of the Court. On March 10, 2017, the trial court ordered that the remaining $119,520.23 be deposited in the registry of the court. On March 22, 2017, the Mancil Executors filed a Motion to Withdraw the $119,520.23 from the registry of court, which the trial court granted on March 28, 2017. In its summary judgment, the trial court did not consider this third disbursement, and it cannot be considered here. See State v. Lewis , 95-0209, p. 2 (La. App. 4 Cir. 4/13/95), 654 So.2d 761, 763.

Attached to the Supplemental Motion for Summary Judgment was a Third Party Claim filed on October 19, 2016, by the Mancil Executors with the BP Claims Center. The Mancil Executors intervened in Helen's claim, asserting that they were entitled to receive the next $539,725.33 to equalize the payments already made to Helen, and thereafter to receive 50% of any further distributions. In response, the BP Claims Center told the Mancil Executors that they needed a final judgment decreeing that Helen is indebted to the Succession of Mancil.

Helen incorrectly appeals the trial court's written reasons for judgment issued on January 30, 2017. "Appeals are taken from the judgment, not the written reasons for judgment." Greater New Orleans Expressway Comm'n v. Olivier , 02-2795, p. 3 (La. 11/18/03), 860 So.2d 22, 24.

In accordance with succession law, the Mancil Executors and Helen eventually will pay all estate debts from the succession property, and then distribute the remaining succession proceeds to the rightful heirs of Mancil and Bernice. See Succession of Comberrel v. Comberrel , 12-1589, p. 4 (La. App. 4 Cir. 6/12/13), 119 So.3d 897, 900.

Under La. C.C.P. art. 3573, "[the] court on its own motion may order the sequestration of property the ownership of which is in dispute without requiring security when one of the parties does not appear to have a better right of possession than the other."