NOT DESIGNATED FOR PUBLICATION

| | | |
|---|---|---|
| STATE OF LOUISIANA IN THE INTEREST OF TREYSON GARON THEDY | * | NO. 2019-CA-0719 |
| | * | COURT OF APPEAL |
| | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. J-2018-060, DIVISION "B"
Honorable Michael D. Clement,
\* \* \* \* \* \*
**Judge Terri F. Love**
\* \* \* \* \* \*

(Court composed of Judge Terri F. Love, Judge Daniel L. Dysart, Judge Tiffany G. Chase)

Terri M. Miles
TERRI M. MILES, L.L.C.
830 3rd Street
Gretna, LA 70053

     COURT APPOINTED COUNSEL FOR MINOR CHILD, A.N.R.

Brian A. Pena
ANDERSON PENA, LLC
4833 Conti Street, Suite 107
New Orleans, LA 70119

     COUNSEL FOR MOTHER/APPELLEE, C.R.

Russell Barksdale
PLAQUEMINES PARISH PUBLIC DEFENDER
301 Main Street
Belle Chase, LA 70037

     COUNSEL FOR DEFENDANT/APPELLANT, TREYSON THEDY

**AFFIRMED**
**DECEMBER 4, 2019**

This appeal arises from the father's involuntary termination of parental rights.  The minor child was conceived as a result of a sexual offense.  The mother of the minor child petitioned to terminate the father's parental rights, which the trial court granted.

The father appeals contending that the trial court's reasons for granting the termination constitute manifest error and that the trial court erred by denying his motion to recuse.

We find no manifest error in the trial court's determination that the best interest of the minor child was served by terminating the father's parental rights, given the unique facts and circumstances of the case.  Also, no basis requiring recusal was established by the father.  The judgment of the trial court is affirmed.

## *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

C.R.[1] was thirteen years old when Treyson Garon Thedy, who was roughly ten years older, initiated an online relationship with her through Facebook.  When C.R. first met with Mr. Thedy, at the age of thirteen, she said he masturbated in her presence.  Once C.R. reached the age of fifteen, the two began engaging in sexual

_____

[1] Initials are used in accordance with Uniform Rules-Courts of Appeal, Rule 5-2 to protect the juvenile's identity.

1

intercourse, and the minor child was conceived.[2] The minor child was born when C.R. was sixteen and Mr. Thedy was twenty-six. As a direct result of Mr. Thedy's interactions with C.R., Mr. Thedy was convicted of carnal knowledge of a juvenile and pornography involving juveniles. Mr. Thedy currently remains incarcerated.

C.R. filed a Petition for Termination of Parental Rights or Alternatively for Full Custody pursuant to La. Ch. C. art 1004. Mr. Thedy filed a Motion for Recusal because the trial court judge presided over preliminary matters in his criminal proceeding, which was resolved without a trial. Mr. Thedy also filed exceptions of no right of action, alleging the mother was not the proper party, and no cause of action, alleging the process was only proper with a pending adoption. Both the recusal and the exceptions were denied. Following a trial, the trial court granted C.R.'s petition to terminate Mr. Thedy's parental rights, finding that the minor child was conceived during a sexual offense and that the best interests of the child supported termination. Mr. Thedy's suspensive appeal followed.

On appeal, Mr. Thedy contends that the trial court: 1) committed manifest error by finding that it was in the best interest of the child to terminate his parental rights, 2) erred as a matter of law because no cause of action exists without a pending adoption, 3) committed manifest error by denying the motion to recuse, and 4) erred as a matter of law by allegedly rendering the judgment in thirty-one days as opposed to thirty.

### STANDARD OF REVIEW

"'A trial court's findings on factually-intense termination of parental rights issues are governed by the manifest error standard of review.'" *State in Interest of J.S.*, 17-0908, p. 4 (La. App. 4 Cir. 2/7/18), 238 So. 3d 600, 603 (quoting *State in*

---

[2] Paternity was established with DNA testing.

2

*Interest of C.A.C.*, 11-1315, p. 7 (La. App. 4 Cir. 2/1/12), 85 So. 3d 142, 146). However, the interpretation and application of a statute presents a question of law, "which requires *de novo* review." *State in Interest of K.C.C.*, 15-1429, p. 4 (La. 1/27/16), 188 So. 3d 144, 146.

### *TERMINATION OF PARENTAL RIGHTS*

While the current matter presents a question of termination of parental rights and not a question of child custody, we are guided by the same overarching principles regarding the best interest of the child. *See* La. C.C. art. 131, La. Ch.C. art. 1037(B). *See also C.A.C.*, 11-1315, p. 8, 85 So. 3d at 146. "In an involuntarily termination of parental rights case, courts must balance the often competing interests of the natural parent and the child." *C.A.C.*, 11-1315, p. 7, 85 So. 3d at 146. "Congruent with the parent's interest, the State has an interest in terminating parental rights under certain circumstances." *Id*.

The involuntary termination of parental rights requires two findings. First, clear and convincing evidence must be presented of the statutory ground for termination. *C.A.C.*, 11-1315, p. 8, 85 So. 3d at 147. La. Ch.C. art. 1015(3) provides that the "[c]onviction of a sex offense as defined in R.S. 15:541 by the natural parent which resulted in the conception of the child" may constitute grounds for the termination of parental rights. Mr. Thedy was convicted of carnal knowledge of a juvenile and pornography involving juveniles. Both crimes are contained in La. R.S. 15:541(24)(a) as listed sex offenses. La. Ch.C. art. 1004 outlines who may bring a petition for termination of parental rights. Section I provides that: "[w]hen a child is conceived as the result of a sex offense as defined in R.S. 15:541, the victim of the sex offense may petition to terminate the rights of the perpetrator of the sex offense." This first requirement was undisputed.

3

Second, and once the grounds are proven by clear and convincing evidence, the trial court must decide whether termination of parental rights is in the best interest of the child. *C.A.C.*, 11-1315, p. 8, 85 So. 3d at 147. La. C.C. art. 134(A) provides factors to be considered by the trial court when determining a child's best interest. These non-exclusive factors include the following:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

4

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

We are "not bound to make a mechanical evaluation of all of the statutory factors listed in Article 134, but should decide each case on its own facts in light of those factors." *Lannes v. Lannes*, 07-0345, p. 5 (La. App. 4 Cir. 2/13/08), 977 So. 2d 1119, 1122.

Mr. Thedy contends that the trial court committed manifest error by finding that it was in the minor child's best interest to terminate his parental rights. Specifically, Mr. Thedy alleges the trial court's statement that he was convicted "of other sex offenses against another juvenile" in the reasons for judgment, invalidates the trial court's judgment. Mr. Thedy also avers that the trial court erred by finding there was a cause of action when no adoption of the minor child was pending. Mr. Thedy lastly maintains that the trial court erred by not rendering a judgment within thirty days.

***Best Interest of the Child***

The first prong of the inquiry was proven, as it was undisputed that the minor child was conceived during the commission of a sexual offense, as outlined in La. R.S. 15:541. Accordingly, we must examine whether the trial court committed manifest error by finding that the minor child's best interests were

served by terminating Mr. Thedy's parental rights.

C.R. testified that Mr. Thedy first messaged her on Facebook when she was thirteen years old. She stated that the two exchanged messages for approximately two weeks prior to meeting for the first time. C.R. stated that the first time she met Mr. Thedy, at the age of thirteen, he put his arm around her, "was just very touchy," was kissing her, and "shoved his tongue in [her] mouth." She said that she "kept pushing him away because [she] kind of felt uncomfortable." C.R. stated that Mr. Thedy then masturbated in front of her. They did not begin engaging in sexual intercourse until she turned fifteen. She became pregnant with the minor child when she was fifteen. The minor child was born when she was sixteen and Mr. Thedy was twenty-six. C.R. testified that the minor child's birth certificate did not list a father because her father had a restraining order against Mr. Thedy. Therefore, he was prevented from coming to the hospital to sign the birth certificate.

C.R. stated that Mr. Thedy was around the minor child for visitation after the restraining order "was broken." Other than that, C.R. testified that Mr. Thedy visited with the minor child during jail visitation. The minor child does not ask about Mr. Thedy, ask about a father, or mention the past visits with Mr. Thedy. C.R. stated that she "just [does not] feel comfortable" with the minor child having a relationship with Mr. Thedy. She further testified that she did not know if Mr. Thedy would possibly harm the minor child, but that she feared he would.

C.R. wrote a letter to the governor seeking a pardon for Mr. Thedy, but stated that it was not her idea. When questioned about the affidavit she previously authored stating that Mr. Thedy was a loving and great man, C.R. testified that she felt she was forced to write them. C.R. stated that she wrote several versions of an

6

affidavit that were corrected and/or approved by Mr. Thedy. She further stated that Mr. Thedy "did tell me that he would send some people to hurt me in his family if I didn't write it." When asked why she continually answered Mr. Thedy's telephone calls from jail, C.R. testified:

> Sometimes I didn't want to answer it, but I did anyway. Sometimes I was aggravated, and I didn't want to pick up; but I did.
> And I wasn't really sure - - if I didn't complete this affidavit and send it, I didn't - - I wasn't sure if anything would happen or would happen. Because I didn't know if he would - - if he had - - if his cellmates knew other people out of the jail that would possibly come hurt me. I didn't know; so, I just did anything that he said to do.
>
>         *        *        *
>
> Yes, sir. Over the phone. He told me - - he told me that he would send people to come and hurt me, in his family.
>
>         *        *        *
>
> If I didn't do what he told me to do.

A voicemail from Mr. Thedy to C.R. was then played for the trial court, wherein he said the following:

> You're the true definition of a f***ing whore and a piece of s**t. Just because I don't like you does not mean you get to have the right to take my f***ing kid away from me. You're lucky I'm not in that f***ing street where - - because I'll beat the f**k out of your stupid f***ing ass. You're a f***ing piece of s**t, and I hope you f***ing die.

Mr. Thedy's family assisted C.R. by giving her money "[a] few times" and by letting her live with Mr. Thedy's mother for five months. C.R. testified that Mr. Thedy informed her that he had a previous sexual relationship with a fourteen year old when he was around twenty and he would sneak into the girl's house.

Mr. Thedy called a family friend to testify as to his character. She testified that she witnessed Mr. Thedy around young children when he was thirteen or fourteen, between 2002 and 2005. She stated that Mr. Thedy "would help around

the house, like normal kids." Mr. Thedy did not threaten kids in her presence and he helped her with her children. She also stated that she and her children attended First Pentecostal Church with Mr. Thedy in Chalmette, Louisiana.

Mr. Thedy's mother also testified. Ms. Thedy stated that her son was "great with children" and had a "great relationship" with his sister's four boys prior to his incarceration. She testified that Mr. Thedy babysat his nephews, took them on outings, and went on out-of-town trips with them. Ms. Thedy stated that her son attended First Pentecostal Church regularly "[e]very Sunday, Wednesday, Friday night. And I think a Bible study was on a Tuesday." She believed Mr. Thedy took education very seriously, and provided C.R. with access to approximately $8,200 when he went to jail. In regards to supporting the minor child, Ms. Thedy testified that Mr. Thedy could provide support and that he owns a property with her and another property on his own.

Lastly, Mr. Thedy's former professor and faculty advisor from Nunez Community College testified that Mr. Thedy was an excellent student who was conscientious, helpful, and not afraid to speak in class. She also described him as loyal, dependable, and a hard worker. The professor taught Mr. Thedy in nine sociology classes, including the sociology of sexual behavior and the sociology of deviant behavior.

The testimony reflected that the minor child had not developed a deep, emotional tie with Mr. Thedy. Mr. Thedy's ability to provide for the minor child was questionable. His mother stated that he could provide well and owned two properties. However, he is represented by a Plaquemines Parish Public Defender and is proceeding as an indigent. The minor child has remained with C.R. since birth and never spent the night or stayed with Mr. Thedy.

8

The potential of child abuse, moral fitness, and history of criminal activity of Mr. Thedy, as reflected by the testimony, was troubling. While the trial court stated in its reasons for judgment "that it is in the best interest of the child that Thedy's parental right be terminated considering his convictions of other sex offenses against another juvenile," the record lacks evidence of a conviction relative to another juvenile. The trial court judge may have mistakenly written conviction, even though the testimony adduced was that Mr. Thedy told C.R. he had a previous sexual relationship with a fourteen-year-old girl when he was around twenty. We note that an appeal is taken from a trial court's judgment and not from the reasons for judgment. *Succession of Barrois*, 17-0560, p. 8 (La. App. 4 Cir. 4/6/18), 243 So. 3d 122, 128 n.3. C.R. testified about Mr. Thedy's previous sexual relationship with another female juvenile. Therefore, regardless of the trial court's mistake, the sentiment remains unchanged as to Mr. Thedy's past sexual interactions with juveniles. Based on these reasons and the testimony presented, we do not find that the trial court manifestly erred by finding that terminating Mr. Thedy's parental rights was in the best interest of the minor child.

### *Cause of Action*

We find no merit to Mr. Thedy's assertion that no cause of action exists for a termination of parental rights without an adoption pending. "The exception of no cause of action 'tests the legal sufficiency of a petition by examining whether, based upon the facts alleged in the pleading, the law affords the plaintiff a remedy.'" *Koch v. Covenant House New Orleans*, 12-0965, p. 3 (La. App. 4 Cir. 2/6/13), 109 So. 3d 971, 972 (quoting *Meckstroth v. Louisiana Dept. of Transp. & Dev.*, 07-0236, p. 2 (La. App. 4 Cir. 6/27/07), 962 So. 2d 490, 492). La. Ch.C. art. 1004 outlines who may bring an action for the termination of parental rights and

9

when. Subsection I specifically provides that "[w]hen a child is conceived as the result of a sex offense as defined in R.S. 15:541, the victim may petition to terminate the rights of the perpetrator of the sex offense." The statute does not include a requirement that an adoption be pending.

### *Judgment Within Thirty Days*

We likewise find no merit to Mr. Thedy's contention that the trial court's judgment should be reversed because it was rendered thirty-one days after submission. La. Ch.C. art. 1037(A) mandates that the trial "court shall render its judgment within thirty days." The trial court deemed the matter submitted on May 28, 3019, and the judgment was rendered on June 28, 2019. While the trial court's judgment was issued on the thirty-first day, the law does not provide reversal of the judgment as a remedy. In fact, no remedies are explicitly provided.

### *RECUSAL*

Mr. Thedy asserts that the trial court erred by denying his motion to recuse, as the trial court judge previously presided over preliminary matters regarding his criminal convictions. Specifically, Mr. Thedy contends that La. C.C.P. art. 151(A)(4) and (B)(3) warranted recusal. Subsection (A)(4) mandates recusal when the judge "[i]s biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys or any witness to such an extent that he would be unable to conduct fair and impartial proceedings." Subsection (B)(3) states that recusal is discretionary when the trial court judge "[h]as performed a judicial act in the cause in another court."

The record does not reveal that Mr. Thedy sought supervisory review of the denial of his Motion to Recuse. However, "[a]n appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to them, in addition to the review

of the final judgment when an unrestricted appeal is taken." *Orleans Par. Sch. Bd. v. Lexington Ins. Co.*, 11-1720, p. 10 (La. App. 4 Cir. 8/22/12), 99 So. 3d 723, 729. Mr. Thedy sought to appeal "all errors to be assigned concerning the termination of [his] parental rights." As such, we will address his Motion to Recuse.

According to the court minutes, a separate trial court judge presided over the recusal hearing. While the record does not contain the recusal judgment, reasons for judgment, or transcript of the hearing, Mr. Thedy's trial court judge stated on the record at a pre-trial hearing that he was the presiding judge over Mr. Thedy's criminal prosecution, but the criminal matter resolved prior to trial. Therefore, the trial court judge did not view or hear the State's evidence against Mr. Thedy.

Presiding over Mr. Thedy's preliminary criminal proceedings prior to trial was a "separate and distinct 'cause' from the" Petition for Termination of Parental Rights. *Ray v. Bird & Son, Inc.*, 323 So. 2d 904, 907-08 (La. App. 2nd Cir. 1975) ("the fact that the trial judge heard a traffic violation matter arising out of the same accident does not constitute the performance of a judicial act 'in the cause' in another court. The traffic violation matter is a separate and distinct 'cause' from the civil damage suit"). *See also McNeill v. Cont'l Cas. Co.*, 244 So. 2d 693, 697-98 (La. App. 4th Cir. 1971) (trial court did not have to recuse when it "tried a previous case involving a determination of injury arising out of this same accident and found in favor of the plaintiff"). Thus, we do not find error based on this ground.

Further, judges are "'presumed to be impartial.'" *In re Eleanor Pierce (Marshall) Stevens Living Tr.*, 17-111, p. 13 (La. App. 3 Cir. 10/4/17), 229 So. 3d 36, 47 (quoting *Slaughter v. Board of Sup'rs of Southern Univ.*, 10-1114, p. 8 (La. App. 1 Cir. 8/2/11), 76 So. 3d 465, 471). "In interpreting La.Code Civ. P. art. 151,

the jurisprudence has held the article 'requires a finding of actual bias or prejudice,' which 'must be of a substantial nature and based on more than conclusory allegations.'" *Covington v. McNeese State Univ.*, 10-0250, pp. 2-3 (La. 4/5/10), 32 So. 3d 223, 224-25 (quoting *Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc.*, 00-1930, 00-1931, p. 15 (La. App. 1 Cir. 9/28/01), 809 So. 2d 1040, 1050).  Mr. Thedy provided nothing more than conclusory allegations that the trial court judge was biased or prejudiced based on his functions performed in the criminal prosecution.  As such, we do not find that Section (A)(4) mandated the trial court's recusal.  Mr. Thedy's assignment of error lacks merit.

### *DECREE*

For the above-mentioned reasons, we find that the trial court did not err by finding that the best interest of the minor child was served by involuntarily terminating the parental rights of Mr. Thedy.  It was undisputed that the minor child was conceived during the commission of a sexual offense for which Mr. Thedy remains incarcerated.  Further, Mr. Thedy did not establish facts that warranted the recusal of the trial court judge.  The trial court's judgment is affirmed.

**AFFIRMED**