Judge Terri F. Love
This case arises from the trial court's denial of the Department of Children & Family Services' ("State") petition to terminate parental rights. The trial court found that termination of the mother's parental rights was not in the best interest of the child considering the mother is attending and making progress in her therapy sessions, the close relationship shared by the parent and child, and Louisiana's reluctance to terminate parental rights but in the most extreme circumstances. Based on the totality of the circumstances presented, we find the decision to deny termination of parental rights was not manifest error. Accordingly, the trial court's ruling denying the State's petition to terminate parental rights is affirmed.
PROCEDURAL HISTORY AND FACTUAL BACKGROUND
On July 29, 2016, J.S.[1] entered foster care, following allegations that her mother D.S. physically abused her for which D.S. was arrested. The State filed a Child in Need of Care petition, and J.S. was subsequently adjudicated a Child in Need of Care. Thereafter, the State filed a petition to terminate parental rights against D.S. based on a 16-year old conviction in Alaska relating to the abuse of her son. Meanwhile, D.S. was charged in Orleans Parish Criminal District Court with respect to the alleged physical abuse of her daughter J.S. D.S. later pled guilty pursuant to La. C.Cr.P. art. 894 to one count of domestic abuse battery in violation of La. R.S. 14:35.3 and was placed on probation. As a *602 condition of probation, D.S. was required to enroll in and complete a court approved domestic abuse intervention program and court approved parenting classes. She complied with the requirements of her probation and all services ordered by the Orleans Parish Criminal District Court.
Evidence was presented at trial that D.S. also complied with all services requested by the State and orders of Orleans Parish Juvenile Court. Additionally, D.S. participated in programs offered through the Salvation Army, including "Tokens of Hope," a service that provides ongoing case management services for her and J.S.
At trial, D.S. acknowledged her prior conviction involving her son as well as her conviction relating to the abuse of J.S. With respect to the incident involving J.S., D.S. testified that she was angry at the person she was living with at the time, who had accused her of "sleeping around." D.S. stated that she took her anger out on J.S. by slapping her. She further testified that she has learned better ways to manage her anger and stress. She stated that when she begins to feel angry or stressed she can take a walk outside, confide in friends, and utilize the resources, services, and programs offered through her current support system.
Dr. Julie Larrieu ("Dr. Larrieu"), a Professor of Psychiatry in Behavior Sciences at Tulane University School of Medicine and member of the Tulane Parenting Education Program (T-PEP), testified as an expert in clinical psychology with an emphasis in parent-child relationships and infant mental health. Based on her evaluation of D.S., over the course of treatment, Dr. Larrieu testified that D.S. has difficulty opening up and trusting people. Dr. Larrieu opined that at the time of the trial, she did not believe D.S. could safely parent J.S. She testified that D.S. had only made "minimal clinical progress" over the course of 30 sessions. She explained that in order for D.S. to progress to the second stage of treatment, she must acknowledge and take responsibility for what happened to J.S. and understand what she needs to do differently to keep herself and her daughter safe.
Dr. Larrieu opined that because it could take years to rehabilitate, D.S. would be unable to make the progress needed to safely parent in a "timeframe sensitive for [J.S.]" Nevertheless, Dr. Larrieu admitted certain factors at the outset of her treatment slowed her progress. Dr. Larrieu acknowledged that D.S. explained that she was instructed initially not to discuss the allegations involving J.S. because criminal charges were pending at the time. Dr. Larrieu conceded, however, that when the criminal matter was resolved, D.S. had become more forthcoming as trust was built. Although in her opinion D.S. could not assess whether someone was safe or not, Dr. Larrieu further acknowledged that D.S. raised the issue voluntarily after she was offered assistance and support, on two separate occasions, from men she did not know well. Dr. Larrieu admitted that the discussion arose during therapy sessions and that afterwards D.S. did not accept assistance or make any arrangements with either individual.
Dr. Larrieu testified that depending on the parent's own trauma history, on average, it takes 35-50 sessions for a parent to "make real sustain[ed] behavior changes so that [misconduct] does not happen again." Dr. Larrieu indicated that D.S. had excellent attendance. At the time of the trial, D.S. had attended 30 sessions, and she and her daughter had been observed four times together. She expressed concern that because J.S. thinks she has to take psychological and emotional responsibility, she will be unable to develop her own identity and sense of self. Dr. Larrieu *603 testified that it was apparent from observations together that J.S. and D.S. "really love each other."
Jessica Casby ("Ms. Casby"), a foster care social worker employed by DCFS, testified that J.S. has expressed a desire to live with her mother. Similarly, Sharon Alexis ("Ms. Alexis"), the Shelter Manager at The Salvation Army and "Tokens of Hope" program coordinator, testified as to her interactions with D.S. She stated that Tokens of Hope is an intensive case management program that aids homeless men and women to break the cycle of homelessness by assessing their needs and providing access to helpful resources. Ms. Alexis testified that D.S. is an active participant in the Tokens of Hope program and that her number one goal is to provide a safe home for her and her child.
Following argument from counsel, the trial court concluded that the termination of parental rights against the mother was not in the best interest of J.S. and denied the State's petition. The State timely files this appeal.
STANDARD OF REVIEW
The State claims that the trial court erred in denying the termination of D.S.'s parental rights. "A trial court's findings on factually-intense termination of parental rights issues are governed by the manifest error standard of review." State in Interest of C.A.C. , 11-1315, p. 7 (La. App. 4 Cir. 2/1/12), 85 So.3d 142, 146
(citing State ex rel. SNW v. Mitchell , 01-2128, p. 10 (La. 11/28/01), 800 So.2d 809, 816 ). Discussing the involuntary termination of parental rights, this Court explained:
...[C]ourts must balance the often competing interests of the natural parent and the child. Mitchell , 01-2128 at p. 8, 800 So.2d at 814-15. The child has an interest in terminating parental rights that preclude or delay adoption and inhibit establishing stable, long-term family relationships. State ex rel. G.J.L., 00-3278, p. 6 (La. 6/29/01), 791 So.2d 80, 86. Natural parents have a fundamental liberty interest in the care, custody, and management of their child that " 'does not evaporate simply because they have not been model parents.' " Mitchell , 01-2128 at p. 8, 800 So.2d at 814 (quoting Santosky v. Kramer , 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599, 606 (1982) ). Congruent with the parent's interest, the State has an interest in terminating parental rights under certain circumstances. State in the Interest of A.C. , 93-1125, pp. 9-10 (La. 10/17/94), 643 So.2d 743, 748 (citing La. Ch.C. arts. 1004 and 1015 ).
Id. , 11-1315,p. 7, 85 So.3d at 146.
Louisiana recognizes that "termination of the parental-child legal relationship is one of the most drastic actions the State can take against its citizens." Id. , 11-1315,p. 7, 85 So.3d at 146 (citing State ex rel. A.T., 06-0501, p. 4 (La. 7/6/06), 936 So.2d 79, 82. The two-part test for involuntary termination of parental rights requires; (1) the State to prove by clear and convincing evidence one of the statutory grounds for termination under La. Ch.C. art. 1015 ; and (2) only if the State has met its burden of proving a ground for termination exists, the trial court must then determine whether termination is in the best interest of the child. La. Ch.C. art. 1039. Id. , 11-1315,p. 8, 85 So.3d at 147 (citing State ex rel. L.B. v. G.B.B. , 02-1715, p. 5-6 (La. 12/4/02), 831 So.2d 918, 922 ).
DISCUSSION
On appeal, the State claims that it met its burden in establishing grounds for termination under La. Ch.C. art. 1015(4)(h). The State asserts that it presented clear and convincing evidence of D.S.'s prior felony conviction relating to the alleged *604 abuse of D.S.'s son. The State avers that despite proving grounds for termination exist, the trial court gave undue weight to the parent's interest and insufficient weight to the child's interest in permanency.
In its first assigned error, the State claims that the trial court erred in not declaring D.S. a hostile witness and allowing the State to ask leading questions. "[W]hen a party calls...a witness identified with an adverse party, interrogation may be by leading questions." La. C.E. art. 611(C). Even still, the trial court maintains the discretion to permit the use of leading questions. La. C.E. art. 611(A) and (C). "[O]nly a clear abuse of that discretion which prejudices the [party]'s rights will justify [reversal]." State v. Law , 15-0210, p. 21 (La. App. 1 Cir. 2/24/16), 189 So.3d 1164, 1178 (citing State v. Young , 576 So.2d 1048, 1056 (La. App. 1 Cir. 3/5/91) ).
Counsel for D.S. contends that it is mere conjecture to argue that had the State, through leading questions, extracted testimony from D.S. about the abuse of her son, that the trial court would have viewed the case as extreme enough to warrant termination of D.S.'s parental rights as to J.S. As previously mentioned, "[n]atural parents['] fundamental liberty interest in the care, custody, and management of their child...does not evaporate simply because they have not been model parents." Interest of C.A.C. , 11-1315, p. 7, 85 So.3d at 146 (internal citations omitted).
Additionally, D.S.'s testimony does not suggest she was unwilling or unable to respond to the State's questions. Instead, review of the transcript suggests the State took issue with D.S.'s responses to its line of questioning. Moreover, the State is unable to show that it was prejudiced by the trial court's ruling. The State filed for termination of parental rights on the basis that D.S. abused her son-a child not at issue in the present case-in a life threatening manner, which resulted in a felony conviction. La. Ch.C. art. 1015(4)(h). The State admitted into evidence D.S.'s prior conviction pertaining to her son, and the trial court found the State met its burden of proving a statutory basis for termination of parental rights. Therefore, we find the alleged error to be harmless.
In its second assigned error, the State claims Dr. Larrieu was erroneously prevented from testifying to the content of the materials which formed the basis of her opinions because it contained hearsay. Under La. C.E. 703, an expert may rely on a number of sources, including inadmissible hearsay, to form her opinion or inference. However, an expert's testimony cannot be used to elicit inadmissible hearsay evidence. The objectionable testimony related to the State's attempt to impeach the testimony of D.S., a fact witness in this case. D.S. testified that she slapped J.S. Dr. Larrieu attempted to dispute D.S.'s testimony as though she were a fact witness. The testimony the State tried to elicit from Dr. Larrieu was not testimony that provided an opinion, using her specialized knowledge and training to aid the trial court in understanding the evidence or to determine a factual issue. See La. C.E. art. 702 ; C.M.J. v. L.M.C. , 14-1119, p. 21 (La. 10/15/14), 156 So.3d 16, 31. Therefore, we find the objection was properly sustained.
In its final assignment of error, the State maintains that the trial court failed to find that termination of parental rights was in the best interest of J.S. The State avers that termination of parental rights is presumed when the State establishes by clear and convincing evidence one of the enumerated grounds for termination under La. Ch.C. art. 1015. In State ex rel. S.L.W. , 06-1560, p. 6 (La. App. 4 Cir. 4/18/07), 958 So.2d 53, 57, this Court held that alleged violations of La. Ch.C. art. 1015 do not "create presumptions in favor *605 of the State." The focus of an involuntary termination proceeding, this Court explained, "is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated." Id. (citing La.Ch.C. art. 1001 ). Therefore, while the State need only establish one ground for termination, the two-part test requires the trial court to also find that termination is in the best interest of the child.
The trial court determined that D.S. has made efforts to safely parent J.S. The trial court found that D.S. attends therapy regularly and participates in other programs and services designed to rehabilitate and reunite D.S. with her daughter, who has expressed the same desire. While Dr. Larrieu found D.S. was not progressing at the rate she would prefer, the trial court determined that D.S. is progressing nonetheless. The trial court noted that, according to Dr. Larrieu, it takes on average 35-50 therapy sessions for a parent to show sustained behavior changes, and at the time of trial, D.S. had only 30 sessions. Moreover, no evidence was presented to suggest that D.S. is not capable of being rehabilitated. Therefore, the trial court found termination of D.S.'s parental rights was not in J.S.'s best interest. Based on the totality of the circumstances, we cannot say the trial court committed manifest error in denying the petition for termination of D.S.'s parental rights.
DECREE
In light of the foregoing reasons, we find no manifest error in the trial court's denial of the State's petition for termination of parental rights against D.S. Accordingly, the denial of the petition for termination of parental rights is affirmed.
AFFIRMED
BROWN, J., CONCURS AND ASSIGNS REASONS
BROWN, J., CONCURS AND ASSIGNS REASONS
I write separately to reiterate the district court's finding that the State proved by clear and convincing evidence one of the statutory grounds for termination of parental rights under La. C.Ch. art. 1015, as I find the mother's actions toward J.S. inexcusable. However, I agree with the majority that the district court was not manifestly erroneous in finding it was not in the best interest of the child to terminate the mother's parental rights at this time. Based upon the record before this Court, I find that termination of the mother's parental rights would have been premature. Particularly persuasive and supported by the record was the district court's finding of the effort made by the mother; the district court stated:
One; the mother is participating in all her therapy sessions, she is progressing, but not at a rate in which DCFS [Louisiana Department of Children and Family Services] would like but, she is progressing according to the testimony of the [State's] expert [Dr. Larrieu]. Additionally, she is still in phase one and has not gotten to phase two. The doctor [Dr. Larrieu] could not tell us how long that would take and that currently right now Ms. S[ ] is not even at the average at what it will take she said anywhere from thirty-five to fifty sessions. According to the testimony Ms. S[ ] is currently at thirty sessions.
Accordingly, I concur with the majority to affirm the district court's judgment.

The initials of the juvenile child are used to preserve the confidentiality of the juvenile proceedings. See La. Ch. C. art. 412. For the same reason, the mother is also referred to by her initials.