NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 19-577

DEREK COUTEE

VERSUS

RAPIDES HEALTHCARE SYSTEM, LLC, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 256,413
HONORABLE PATRICIA KOCH, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

AFFIRMED.

Brian Caubarreaux & Associates
Eugene A. Ledet, Jr.
Brian Caubarreaux
Brock H. Duke
Laura B. Knoll
2204 MacArthur Drive
Alexandria, LA 71303
(318) 442-0900
COUNSEL FOR PLAINTIFF/APPELLANT:
    Derek Coutee

**Brandon A. Sues**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Rapides Healthcare System, LLC**

**PICKETT, Judge.**

The son of a patient who died while hospitalized sued the hospital, seeking to recover damages for his father's death. On February 11, 2019, the trial court signed a judgment dismissing the son's claims in accordance with the jury's verdict.

## FACTS

On January 2, 2014, Charles Coutee was admitted to Rapides Regional Medical Center where he had been transported after he experienced dizziness and a possible fainting episode. In the emergency room at Rapides, he was diagnosed as having suffered fainting/loss of consciousness. At noon on January 3, Mr. Coutee was moved from the emergency room to the telemetry floor of the hospital where he was continuously monitored for heart rate and rhythm changes. On admission to the telemetry floor, Dr. Parameswara Krishna Kaimal, a cardiologist, examined Mr. Coutee and ordered that metoprolol, a beta blocker that affects the heart and blood circulation, be administered to him. Dr. Kaimal further ordered that Mr. Coutee was to ambulate. The nurses on duty were to contact Dr. Kaimal if Mr. Coutee's heart rate or rhythm required his consultation.

Beginning at 7:00 p.m. January 3, Cynthia Standish, R.N., became Mr. Coutee's assigned nurse. At approximately, 11:50 p.m., Mr. Coutee experienced an irregular heartbeat, atrial fibrillation, and his heart rate dropped into the 30s, but did not remain that low. Nurse Standish informed Dr. Kaimal of this event. Dr. Kaimal instructed her to discontinue administering metoprolol. He did not instruct Nurse Standish to make any other changes to his original instructions.

At approximately 6:00 a.m. on January 4, at his request, Nurse Standish and Norma Richardson, a patient care technician (PCT), assisted Mr. Coutee to the bathroom to have a bowel movement. Nurse Standish and PCT Richardson then

left Mr. Coutee in the bathroom unattended. Shortly thereafter, which Nurse Standish approximated as three minutes, members of telemetry staff responded to a loud noise in Mr. Coutee's room; they found him unconscious on the floor with no heartbeat and not breathing. Emergency efforts to restart Mr. Coutee's heart were successful; however, he never regained consciousness and died on January 7.

In December 2014, Derek Coutee, Mr. Coutee's only child, filed a petition with the Patient Compensation Fund seeking a review of the medical treatment Rapides and Dr. Kaimal provided to Mr. Coutee. A medical review panel composed of three cardiologists reviewed Derek's complaints and concluded that neither Rapides' treatment nor Dr. Kaimal's treatment of Mr. Coutee was negligent and/or fell below the standard of care applicable to each of them. Thereafter, in July 2016, Derek, individually and on behalf of his father, filed suit against Rapides and Dr. Kaimal, asserting the same claims he presented to the medical review panel. He later dismissed his claims against Dr. Kaimal.

In January 2019, Derek tried his claims against Rapides to a jury. At trial, Derek argued that the actions/inactions of its hospital staff—specifically, Nurse Cynthia Standish—in rendering treatment to Mr. Coutee on January 4, 2014, were negligent and fell below the standard of care applicable to nurse/nurses on a telemetry ward. Derek cross-examined Nurse Standish as his first witness. He also presented his testimony, the expert testimony of a pulmonologist/hospitalist and registered nurse who works in and teaches nursing students in the telemetry ward of a teaching hospital, and the testimony of a telemetry technician who had been on duty when Mr. Coutee's emergency occurred. Rapides presented the testimony of Nurse Standish, Linda Futrell, another nurse on duty in the telemetry ward the morning of January 4, a cardiologist, and a nursing expert. After deliberating, the jury returned a verdict in favor of Rapides. Thereafter, the trial

court signed a judgment dismissing Derek's claims against Rapides. Derek appealed.

## ASSIGNMENTS OF ERROR

On appeal, Derek assigns error with four evidentiary rulings made by the trial court:

1. The Trial Court committed legal error in allowing defense counsel to question Dr. [David] Goldstein regarding Dr. Kaimal's letter, which was undeniably inadmissible hearsay as acknowledged by the Trial Court itself.

2. The Trial Court committed legal error in allowing the defendant to testify to and embellish upon conversations she had with the decedent in crucial time periods before he died over plaintiff's repeated hearsay objections.

3. The Trial Court committed legal error in allowing defendants to introduce the Medical Review Panel opinion to the Jury despite the fact that it was an opinion by three *cardiologists*, none of whom professed any expertise or ability to opine on nursing standard of care.

4. The Trial Court committed legal error in refusing to instruct the Jury on the adverse presumption which accompanies spoliation of evidence due to Rapides' failure to produce or adequately explain the absence of crucial telemetry strips which would have revealed exactly what Mr. Coutee's heart beat was doing at crucial points in his treatment and in the moments directly leading up to his death.

## STANDARD OF REVIEW

As a general rule, trial courts are afforded great discretion concerning the admission of evidence, and their decisions to admit or exclude evidence should not be reversed on appeal in the absence of an abuse of their discretion. *Medine v. Roniger*, 03-3436 (La. 7/2/04), 879 So.2d 706. When reviewing such alleged errors, we must determine whether the complaining party has shown that the ruling complained of "was erroneous and whether the error prejudiced the defendant's cause, for unless it does, reversal is not warranted." *State in Interest of A.S.*, 19-248, p. 8 (La.App. 1 Cir. 9/4/19), __ So.3d__, 2019 WL 4199898 (citing La.Code Evid. art. 103). "Prejudicial error 'affects the final result of the case and works

5

adversely to a substantial right of the party assigning it.'" *Johnson v. Tucker*, 51,723, p. 11 (La.App. 2 Cir. 11/15/17), 243 So.3d 1237, 1243, *writs denied*, 17-2075 (La. 2/9/18), 236 So.3d 1262; 17-2073 (La. 2/9/18), 236 So.3d 1266 (quoting *Buckbee v. United Gas Pipe Line Co. Inc.,* 561 So.2d 76, 85 (La.1990)). Reversal is warranted only if the complaining party shows that when "compared to the record in its totality," the alleged error had "a substantial effect on the outcome of the case." *State in Interest of A.S.*, __ So.3d at __, __. De novo review of the record is not required unless prejudicial error of law is shown to exist. *Id.*

### Dr. Kaimal's Letter

In his first assignment of error, Derek argues that the trial court erred in allowing counsel for Rapides to use a hearsay document to cross-examine his expert, Dr. David Goldstein, a pulmonologist and hospitalist, during the doctor's trial deposition. He urges that this error requires reversal of the jury's verdict and a de novo review by this court. Counsel for Rapides cross-examined Dr. Goldstein regarding the position paper Dr. Kaimal submitted to the medical review panel in his defense. Counsel for Derek objected to the questions, but the parties proceeded with the deposition over Derek's continuing objection. Counsel for Derek noted on the record that counsel for Rapides had stipulated Rapides was not calling Dr. Kaimal to testify at trial.

Before trial, Derek filed a motion in limine seeking to have any questions and responses posed to Dr. Goldstein pertaining to Dr. Kaimal's position paper stricken from Dr. Goldstein's deposition. He argued that the position paper was hearsay; therefore, counsel's questions and Dr. Goldstein's responses were inadmissible. Rapides countered that the line of questioning was admissible because experts are allowed to consider inadmissible hearsay in forming their opinions. The trial court held that the position paper was inadmissible hearsay but,

4

citing La.Code Evid. art. 703(3), determined that Rapides' use of the position paper during its cross-examination of Dr. Goldstein was admissible. Derek now urges that the trial court's determination constitutes reversible error.

Louisiana Code of Evidence Article 703 (emphasis added) states:

> The facts or data in the particular case *upon which an expert bases an opinion or inference* may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Rapides cites *Trueman v. City of Alexandria*, 01-1130 (La.App. 3 Cir. 5/15/02), 818 So.2d 1021, *writ granted*, 02-2166 (La. 11/15/02), 829 So.2d 410, as support for the trial court's ruling. In *Trueman*, this court concluded that the trial court erred in excluding the testimony of a treating physician with regard to the findings and opinions of a physician who performed an independent medical examination (IME) of the plaintiff because the treating physician answered questions regarding the findings and opinions documented by the IME physician, who did not testify at trial. The IME report was included in the plaintiff's certified medical records maintained by his treating physician.

In *Trueman*, the plaintiff's counsel posed numerous questions to the plaintiff's treating physician as to whether his opinions were similar to the opinions stated in the IME report. The expert treating physician testified as to his own opinions and compared his opinions to the IME physician opinions. Derek argues that because Dr. Goldstein did not consider or rely on Dr. Kaimal's position paper in forming his opinions, *Trueman* does not apply here.

In *State In Interest of J.S.*, 17-908 (La.App. 4 Cir. 2/7/18), 238 So.3d 600, *writ denied*, 18-375 (La. 4/16/18), 240 So.3d 923, the fourth circuit acknowledged that an expert may rely on a number of sources, including inadmissible hearsay, to

form her opinion but determined that an expert's testimony cannot be used to elicit inadmissible hearsay evidence. The issue in *J.S.* was out-of-court statements made by a fact witness who testified at trial. The state sought to impeach some of the witness's statements by having its expert witness testify about contrary out-of-court statements the witness made to her. The court concluded that the testimony the state sought to elicit from its expert witness was hearsay regarding facts, not opinion testimony based on "her specialized knowledge and training to aid the trial court in understanding the evidence or to determine a factual issue." *Id.* at 604. Consequently, the court held that the trial court properly sustained the defendant's objection to the State's attempt to elicit inadmissible hearsay testimony.

More on point is the case of *Bobb v. Modern Products, Inc.*, 648 F.2d 1051 (5th Cir.1981), *rev'd on other grounds*, *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997), where the trial court granted a defense motion and refused to admit a physician's deposition testimony supporting the plaintiffs' case because it was untimely and cumulative. The defense counsel attempted to get the content of a report prepared by the physician whose deposition was excluded by cross-examining its own expert on the report. On appeal, the court observed that while wide latitude is generally allowed during cross-examination, "cross-examination which attempts to impeach by slipping hearsay evidence into the trial will not be permitted[.]" *Id.* at 1055. The court determined that the trial court judgment erred in allowing the cross-examination because it allowed the defense to "utilize[] the improper hearsay question as substantive evidence supporting the defendant's own witness." *Id.* at 1056. The court rejected claims that use of the deposition testimony was proper, explaining, "Until defendant established that plaintiff had relied on the report of the other doctor, it was improper for the defendant to read from that report in cross-examining plaintiff's witness." *Id.*

Rapides chose not to call Dr. Kaimal as a witness at trial. Instead, counsel attempted to present Dr. Kaimal's hearsay statements of the facts and his medical opinions to the jury by reading statements from his position paper when cross-examining Dr. Goldstein. Dr. Goldstein did not rely on Dr. Kaimal's position paper and had not read it before being cross-examined in his trial deposition. Accordingly, the trial court erred in allowing Rapides to use the position paper during its cross-examination of Dr. Goldstein.

If Dr. Goldstein's testimony regarding Dr. Kaimail's position paper was the only basis for the jury's verdict, admission of that evidence would be reversible error. That is not the case, however. Mr. Coutee presented the expert opinions of cardiologist Dr. Goldstein and Janice Beerman, R.N. Rapides presented the expert opinions of cardiologist Dr. Elizardi and Luanne Trahant, R.N. The experts' opinions were thoroughly fleshed out by the parties. Derek's experts opined that Rapides' care of Mr. Coutee fell below the standard of care citing a number of issues, including: its personnel did not maintain all the telemetry strips generated during Mr. Coutee's stay in the hospital; Mr. Coutee's sudden cardiac event could have been prevented if Nurse Standish had been more attentive to him; Nurse Standish should have, but did not, take Mr. Coutee's vital signs before she assisted him to the bathroom; Nurse Standish should have, but did not, contact Dr. Kaimal before allowing Mr. Coutee to go to the bathroom because she felt he was unsteady on his feet; and Nurse Standish should have, but did not, keep her eyes on Mr. Coutee while he was in the bathroom. Dr. Goldstein testified that the episode of atrial fibrillation and drop in Mr. Coutee's heart rate at 11:50 p.m. January 3 was a predictor of his 6:00 a.m. January 4 cardiac event.

Rapides countered with fact and expert testimony that identified factual errors with Dr. Goldstein's testimony, such as Mr. Coutee having been found on

the bathroom floor with his head between the toilet and the shower, which was not the case, and he was not aware that Mr. Coutee had previously been diagnosed with sleep apnea, which can cause one's oxygen level and heart rate to drop. Dr. Lizardi testified that based on prior medical records, Mr. Coutee, who was sixty-two years old and weighed 392 pounds, was chronically ill at the time of his admission to Rapides and had experienced episodes similar to the fainting/passing episode that led to hospitalization without serious consequences. Dr. Lizardi further opined that Mr. Coutee had an unexpected, unpredictable, and totally unpreventable sudden cardiac arrest syndrome the morning of January 4 and that nothing that occurred during his hospitalization prior to the cardiac arrest was a predictor of that event. Rapides' experts further testified that the nursing care provided by Nurse Standish and other Rapides staff met the standard of care, the response by Rapides' nursing staff and personnel to Mr. Coutee's sudden cardiac event in the bathroom was reasonable, and Rapides' documentation of Mr. Coutee's hospital stay was reasonable and did not fall below the applicable standard of care. Additionally, the evidence established that on January 3, Derek assisted his father to the bathroom for a bowel movement without incident, just as Nurse Standish and the PCT did on January 4. Having reviewed the entire record, we cannot conclude that the erroneous admission of portions of Dr. Kaimal's position paper through the cross-examination of Dr. Goldstein affected the jury's final determination.

### *Mr. Coutee's Statements to Nurse Standish*

Derek next asserts that the trial court erred in allowing Nurse Standish to testify regarding statements Mr. Coutee made to her after he requested to go to the bathroom. In response to questions posed by counsel for Derek, Nurse Standish testified that Mr. Coutee rejected her suggestions that he use a bedpan or portable

toilet instead of going to the bathroom. She further testified that she did not stay in the bathroom with Mr. Coutee because he rejected her offer to do so. Derek argues that the trial court erred in allowing Nurse Standish to testify to Mr. Coutee's statements because they are hearsay.

Rapides counters that the statements at issue are not hearsay because Derek's counsel elicited the statements with his questions and did not object to her answers. Rapides further asserts that the statements are not hearsay because they were not offered to prove the truth of the matter asserted and they were made for the purpose of obtaining medical treatment.

"Hearsay evidence is not admissible except as otherwise provided by [the Code of Evidence] or other legislation." La.Code Evid. art. 802. Hearsay is defined as "an oral or written assertion . . . other than one made by the declarant while testifying at the present trial . . . offered in evidence to prove the truth of the matter asserted." La.Code Evid. arts. 801(A)(1); (C).

In *Bordelon v. Henderson*, 604 So.2d 950 (La.1992), the plaintiffs sued their father's physician, claiming that the physician's treatment fell below the applicable standard of care because the physician failed to perform certain x-rays on their father. At trial, the plaintiffs objected to the physician testifying that their father refused to be x-rayed. The supreme court reversed its earlier ruling to the contrary, explaining:

> [T]he physician's account of decedent's statement of refusal of the x-ray[] is not hearsay. The declarant's statement is not offered to prove the truth of the matter asserted. LSA–C.E. Art. 801(C). It is offered to prove the statement was made for the purpose of its legal effects or consequences. The legal effect of the statement becomes operative regardless of the credibility of the declarant or the truthfulness of the statement.

*Id.* at 951. The plaintiffs further urged that the physician's testimony was unreliable because he did not note the father's refusal to take the x-ray in the

father's medical records and the physician did not cross-examine their father on the issue during his perpetuation deposition. The supreme court held that these issues go to the credibility and weight of the statements made and that it is the jury's duty, not the court's, to make credibility determinations. The supreme court explained: "While the proposed testimony may be detrimental to plaintiffs' case, it is highly relevant to the central issue in the case which plaintiffs intend to support by use of the decedent's perpetuation deposition, and it cannot be said to be 'unfairly' prejudicial so as to justify exclusion under LSA–C.E. Art. 403." *Id.*

Rapides also argues that Nurse Standish's testimony as to Mr. Coutee's statements to her are not hearsay because they were made to a health care provider in conjunction with the diagnosis and treatment of Mr. Coutee's medical condition. *See* La.Code Evid. art. 803(4). This exception "has been interpreted to limit the scope of this exception to the kind of statements that are usually relied upon by physicians in their *diagnosis and treatment* of patients." Comment (b) to La.Code Evid. art. 803(4). This court determined in *Weeks v. Byrd Medical Clinic, Inc.*, 05-1310, p. 4 (La. App. 3 Cir. 4/5/06), 927 So.2d 594, 598, that statements like those Mr. Coutee made to Nurse Standish do not fall with the ambit of the exceptions provided in La.Code Evid. art. 803(4) because the patient's statements to her physician "as to how she fell have nothing to do with the diagnosis or treatment of her condition and are therefore inadmissible." The same is true here.

*Reed v. Thomas*, 355 So.2d 277 (La.App. 2 Cir.), *writ denied*, 357 So. 2d 1153 (La. 1978), however, addressed a situation more similar to the one presented here. In *Reed*, the issue was whether a landowner knowingly sold the land at issue, not just the standing timber thereon. The landowner's descendants sought to have a tax sale transferring ownership of the land declared invalid on the basis that their deceased ancestor in title had been misled into signing the deed transferring title.

10

They sought to use the testimony of the attorney who previously represented their ancestor in title to satisfy their burden of proof. The defendants objected to the prior attorney's testimony, arguing that it did not satisfy any exception to the general hearsay rule. The trial court allowed the testimony. On appeal, the second circuit affirmed, stating:

> [Attorney] Brown's testimony as to what he said and did as Mrs. Ellis' attorney in 1937, was admissible. His testimony as to Mrs. Ellis' statements to him, even if objected to as hearsay, were admissible to show the fact of the utterances and to explain his acting on her utterances as her attorney. McCormick on Evidence, s 246 (2nd Ed. 1972); *State v. Launey*, 335 So.2d 435 (1976).

*Id*. at 280-81.

Rapides also argues this assignment lacks merit because Derek's attorney "opened the door" for Nurse Standish's testimony as to Mr. Coutee's statements to her. In *State v. Winfrey*, 97-427, p. 26 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 78, *writ denied*, 98-264 (La. 6/19/98), 719 So.2d 481, the court held "Defense counsel opened the door for the inadmissible hearsay report by questioning on cross-examination [a witness] extensively from the report."

Derek called Nurse Standish on cross-examination as his first witness. During the course of the examination, Derek's counsel asked her, "Was Mr. Coutee insisting on going to the toilet?" Nurse Standish responded, "He said that he could not use the bedpan." Counsel did not object to Nurse Standish's response. Nonetheless, Derek's counsel did object to similar answers elicited by counsel for Rapides during direct examination of Nurse Standish. Applying the above precepts, the trial court did not err in allowing Nurse Standish's responses.

### Medical Review Panel Opinion

In this assignment of error, Derek argues the trial court erred in allowing Rapides to introduce the medical review panel opinion into evidence. He contends

the opinion has no application here because none of the panel members were nursing experts and one of the panel members was not allowed to testify at trial because he could not show that he had sufficient knowledge of the facts.

Louisiana Revised Statutes 40:1231.8(H) specifically provides that medical review panel expert opinions "shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness." If, however, the opinion exceeds its statutory authority by determining a material issue of fact, the opinion is inadmissible. *McGlothlin v. Christus St. Patrick Hosp.*, 10-2775 (La. 7/1/11), 65 So.3d 1218.

Derek has not shown that the medical review panel exceeded its authority in its opinion. We further note that the trial court refused to allow one of the panel members to testify at trial because he was not adequately prepared to testify, which the trial court observed could lead to confusion of the jury. The trial court did not err in allowing its opinion to be introduced into evidence.

### *Spoliation of Telemetry Strips*

In his last assignment of error, Derek asserts that the trial court erred in determining that Rapides' failure to maintain all of his father's telemetry strips did not constitute spoliation of evidence that warrants the imposition of an adverse presumption and a jury instruction on the issue. Rapides argues its employees did not intentionally destroy evidence that it knew Derek would request in his case. It further argues that Derek waived his right to present this assignment on appeal because he did not object to the trial court's denial of his motion in limine on the issue. As to the latter argument, we find that the trial court's denial of Derek's motion in limine after the issues were fully briefed and argued to the trial court and

12

Derek's reminder to the trial court at the conclusion of the evidence that the issue needed to be addressed preserved his right to present the issue on appeal. *See Maldonado v. Kiewit La. Co.*, 12-1868, 12-1869 (La.App. 1 Cir. 5/30/14), 152 So.3d 909, *writ denied*, 14-2246 (La. 1/16/15), 157 So.3d 1129. Accordingly, we will address this assigned error.

The first circuit addressed spoliation of evidence in *Carter v. Hi Nabor Super Market, LLC*, 13-529, pp. 6-8 (La.App. 1 Cir. 12/30/14), 168 So.3d 698, 703-04, *writ denied*, 15-190 (La. 4/17/15), 168 So.3d 399, where it explained:

> Spoliation of the evidence is an *evidentiary* doctrine that refers to an intentional destruction of evidence for the purpose of depriving the opposing parties of its use in pending or anticipated litigation. . . .
>
> A trial court has the authority to impose sanctions on a party for spoliation of evidence and other discovery misconduct under both its inherent power to manage its own affairs and the discovery articles provided in the Louisiana Code of Civil Procedure. Under La. C.C.P. art. 1471, when a party refuses or is unable to comply with a discovery order, the trial court in a pending action "may make such orders in regard to the failure as are just," thereby granting the trial court broad discretion to impose a range of sanctions. La. C.C.P. art. 1471(A); *see also* Fed.R.Civ.P. 37. Even without a discovery order, La. C.C.P. art. 191 authorizes trial courts to impose sanctions for spoliation of the evidence, since the destruction of evidence clearly interferes with the court's ability to fairly administer justice. Specifically, La. C.C.P. art. 191 provides that a trial court "possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law."

Courts have long held that as a general rule, "[w]here a litigant fails to produce evidence available to him and gives no reasonable explanation, the presumption is that evidence would have been unfavorable to his cause." *Salone v. Jefferson Parish Dep't of Water*, 94-212, p. 6 (La.App. 5 Cir. 10/12/94), 645 So.2d 747, 750 (quoting *Boh Bros. Const. Co. Inc. v. Luber-Finer, Inc.*, 612 So.2d 270, 274 (La.App. 4 Cir.1992), *writ denied*, 614 So.2d 1256 (La. 3/2693)). Conversely, if a valid explanation for failing to produce the evidence is provided, the presumption does not apply. *Id.*

13

The trial court considered Derek's claims that Rapides intentionally failed to retain copies of all the telemetry strips generated during Mr. Coutee's stay in the telemetry wing in light of the dates of Mr. Coutee's hospitalization, the dates on which Rapides would likely have had notice of Derek's intention to pursue a claim for his father's death, Rapides' written procedure for maintaining telemetry strips, and the testimony of Rapides' personnel including Nurse Standish, Nurse Futrell, and Ms. Holmes, regarding Rapides' actual practices with regard to printing and maintaining of telemetry strips. Rapides' written procedure provides, in pertinent part:

> 2. Once a clear signal is established, an initial telemetry strip is printed and placed on the patient's chart.
>
> 3. Telemetry strips are printed on each nursing unit, and placed in the patient chart every shift.

Ms. Holmes was asked if she had to notify a nurse and print a telemetry strip every time "an arrhythmia occurred . . . whether it was sustained, prolonged, [or] very short in nature?" She answered, "Yes." As to printing the strips, she clarified:

> [S]ometimes the nurse would say I'm looking at it or I've been down there or maybe a strip didn't need to be printed because maybe they were going in and out of rhythms . . . . So I can't say that a strip has to be printed every time, any kind of arrhythmia.

The trial court determined the evidence did not establish that Rapides' personnel intentionally discarded or failed to preserve Mr. Coutee's telemetry strips. Nothing in the evidence controverts this conclusion. Accordingly, the evidence does not establish the trial court abused its discretion in reaching this conclusion and denying Derek's request for adverse presumption and attendant jury instruction to that effect.

Contrary to Derek's claims, this case is not comparable to the case of *Sayre v. PNK (Lake Charles), LLC,* 15-859, pp. 9-10 (La. App. 3 Cir. 3/23/16), 188 So.3d 428, 436, *writ denied*, 16-696 (La. 6/28/16), 192 So.3d 780, where "the defendant had not only entrenched across-the-board policies requiring employees to take a series of specific steps when an accident occurred, those policies demanded a permeating and continuing control of the evidence to the exclusion of all others." This court concluded that because "the defendant selectively adhered to some of its operating procedures but failed to adhere to others," the plaintiff was entitled to an adverse presumption that evidence the defendant failed to produce would have been unfavorable to it. *Id.* That is not the case here.

## DISPOSITION

For the reasons discussed herein, the trial court's judgment is affirmed. All costs are assessed to Derek Coutee.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.